[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION AND JUDGMENT ENTRY
* * * * *
This case is before the court on appeal from a judgment of the Sandusky County Court of Common Pleas, Juvenile Division. That court granted temporary custody of appellant's daughter Jessica P. to the Sandusky County Department of Human Services. Appellant raises the following assignment of error:
 "THE LOWER COURT'S ORDER DENYING APPELLANT'S MOTION FOR CUSTODY DISREGARDED THE WEIGHT OF THE EVIDENCE AND FAILED TO FOLLOW THE CRITERIA FOUND IN OHIO REVISED CODE SECTION 3109.04."
The facts giving rise to this appeal are as follows. Jessica was born in the state of Washington in 1991 while appellant, her father, and her mother, Amy B., were married. Jessica's parents divorced in Washington in 1992. The Washington domestic relations court entered a shared parenting plan for Jessica as part of its final order in 1993. The plan designated Amy as Jessica's custodian, but ordered Jessica to live with appellant from December through June of each year until she started attending school. The order did not require appellant to pay child support.
After the divorce, Amy and Jessica moved to Ohio. Except for a year in Nebraska, appellant continued to reside in Washington. Amy married Dan B. and had two sons in Ohio. Appellant remarried and had two daughters in Washington. Appellant had no contact with Jessica after she moved to Ohio.
In July 1996, the Sandusky County Department of Human Services ("SCDHS") removed Jessica and her two younger half-brothers from Amy and Dan's home in Ohio because of unsanitary and unsafe conditions in the home. At the adjudicatory hearing on August 13, 1996, Amy and Dan consented to a finding that the three children were dependent and neglected as SCDHS had alleged in its complaint. All three children returned home that day under an order of interim protective supervision. The court ordered Amy and Dan to remedy safety risks in the home and to make the house comply with minimum department of health standards.
On September 9, 1996, the juvenile court held a dispositional hearing. Appellant appeared at the hearing. The court denied appellant's oral motion for visitation because "there had been no visits with the child in three years and due to abuse allegations pending against him."[1]
At the disposition hearing, the court also approved a case plan and incorporated it into its judgment entry. The case plan required appellant to attend counseling to provide a safe and secure environment and to resolve the abuse allegations. The case plan required Amy and Dan to attend marriage counseling and parenting classes. Amy and Dan were to use a parent aide to learn how to keep house and to use protective day care so they had time to take care of the house. SCDHS continued to monitor the home with weekly unannounced visits.
On September 9, 1996, appellant filed several written motions, including one for visitation and one for custody under R.C. 2151.353(A)(3).[2] The juvenile court scheduled hearings on the motions for January 16, 1997, at the same time as the hearing to review disposition.
However, Amy and Dan did not follow through on the services to fulfill the case plan, and the unsafe and unsanitary housing conditions did not improve.
On October 21, 1996, SCDHS filed a "motion to modify legal custody from" Amy and her husband to "temporary custody to SCDHS." At a shelter care hearing that day, the court granted interim temporary custody of the three children to SCDHS. Although appellant did not appear, he was represented by counsel. The court declined to appoint appellant as a possible temporary custodian for Jessica. Again, the court found appellant had not visited "Jessica in three years and there are abuse allegations pending."
On January 16, 1997, a juvenile court magistrate considered several motions at the hearing to review disposition, including appellant's motions for custody and visitation. The court also considered SCDHS' motion to modify legal custody.
Although SCDHS continued to seek temporary custody of Jessica's two younger half-brothers, the SCDHS case worker recommended that the court grant appellant's motion for legal custody. At the hearing, the caseworker testified that granting legal custody of Jessica to appellant would be in her best interests.
Jessica's therapist also recommended that awarding legal custody of Jessica to appellant would be in her best interest. Jessica's therapist expressed concerns that reunification with appellant would cause Jessica to be geographically separated from her half-brothers and her mother. However, she recommended that Jessica have reasonable visitation with her brothers and mother if the court granted legal custody of Jessica to appellant.
On March 28, 1997, the magistrate filed a report and recommendation, which granted SCDHS' motion for temporary custody of all three children. The magistrate denied appellant's motion for custody, but granted appellant's motion for visitation.
When the trial court denied appellant's motion, it found:
 "3. The Case Plan is not currently being complied with: The water test results have not been received; the [re]inspection by the fire department has not been completed;
 "7. That [appellant's] Motion for Custody * * * is denied. The Court finds that [Amy and Dan] have made to date, substantial compliance with the Case Plan. That [appellant], until recently, has not had contact with Jessica for three years. His recent contacts have been by letter, phone and approximately 6 to 8 visits * * *."
On April 11, 1997, appellant filed objections to the Magistrate's Report and Recommendation. He objected to the magistrate's determinations that it was not in Jessica's best interest to grant appellant's motion for custody and that Amy and Jessica's stepfather had made "substantial compliance with the case plan." While his objections were pending, SCDHS filed a Motion to modify temporary custody to return all three children to Amy and Dan under protective supervision.
On May 19, 1997, the juvenile court rejected appellant's objections and adopted the magistrate's report. The court found that clear and convincing evidence supported the magistrate's findings of fact and conclusions of law.
Before considering the parties' arguments concerning the merits of the sole assignment of error, this court must first determine whether it has jurisdiction over this appeal. Appellee contends that because appellant did not file his notice of appeal until June 20, 1997, thirty-two days after the court journalized its judgment on May 19, 1997, the notice of appeal was untimely.
However, under Civ.R. 58(A) and (B) and App.R. 4(A), journalizing the judgment entry alone does not necessarily commence the thirty day period in which to file a notice of appeal. Pursuant to Civ.R. 58(A), a judgment is effective only when the court clerk enters it in the journal. Civ.R. 58(B) provides that when the court signs a judgment it shall endorse thereon a direction to the clerk to serve all parties with notice of 1) the judgment and 2) the date of its entry upon the journal.
The trial court complied with the requirements of Civ. R. 58(A) by directing the clerk to serve all parties notice of the judgment including the date it was journalized. However, the record does not reflect whether the clerk ever served the judgment to the parties as prescribed in Civ.R. 58(B):
 "Within three days of entering the judgment upon the journal, the clerk shall serve the parties * * * and note the service in the appearance docket. Upon serving the notice and notation of the service in the appearance docket, the service is complete. The failure of the clerk to serve notice does not affect * * * the running of the time for appeal except as provided in App.R. 4(A)." (Emphasis added.)
App.R. 4(A) defines the requirements for filing a timely notice of appeal. Under App.R. 4(A), notices of appeal are to be filed "within thirty days of the later of entry of the judgment or order appealed or, in a civil case, service of the notice of judgment and its entry if service is not made on the party within the three day period in Rule 58(B) of the Ohio Rules of Civil Procedure." If service is not made within three days and noted onthe docket under Civ.R. 58(B), the thirty days does not begin to run. See In the matter of Andrew C. (Oct. 11, 1996), Lucas App. No. L-95-367, unreported.
Because there is no notation by the clerk of court in the docket submitted on appeal to show that the trial court's order was served, the thirty day time period did not begin to run from the date the court journalized the judgment on May 19, 1997. Accordingly, appellant's notice of appeal was filed timely.
We will now consider the merits of appellant's sole assignment of error. Appellant contends that the magistrate's rulings did not apply or document criteria set forth in R.C.3109.04. Specifically, appellant contends the court did not consider: both parents' wishes regarding the child's care; the custodial parent's health; the custodial parent's failure to facilitate visitation; and the fact that the child was adjudicated neglected while in the custodial parent's care. Appellant also argues that the decision was against the manifest weight of the evidence because the "record is replete with justification in appellant's request for custody change."
A trial court's decision, in a child custody matter, must be upheld absent an abuse of discretion. Davis v. Flickinger
(1997), 77 Ohio St.3d 415, 418 (citations omitted). Abuse of discretion generally connotes "more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219 (citations omitted).
 "[To make a custody decision], a trial judge must have wide latitude in considering all the evidence before him or her * * * and such a decision must not be reversed absent an abuse of discretion. * * *
 "The standard for abuse of discretion * * * applied to custody cases * * * [is]:
 "Where an award of custody is supported by a substantial amount of credible and competent evidence, such an award will not be reversed as being against the weight of the evidence by a reviewing court.
 "The reason for this standard of review is that the trial judge has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page. * * *" Davis, supra, 77 Ohio St.3d at 418
(citations omitted).
In dependency, neglect and abuse cases, a juvenile court generally applies the law in R.C. Chapter 2151 governing Juvenile Courts. However, a juvenile court must apply the standards of R.C. 3109.04 when it exercises jurisdiction over a dependent, neglected, or abused child and an existing custody decree from a domestic relations court exists. In re Poling (1992), 64 Ohio St.3d 211; compare In re Riddle (1997), 79 Ohio St.3d 259, 265
(grandparents' request for temporary custody is incidental to neglect and dependency action where goal is to provide a stable environment for child, not to wrest custody from custodial parent); see R.C. 2151.02(A) and (C).
To apply R.C. 3109.04(E), this court has stated previously:
 "Under the terms of R.C. 3109.04(E)(1)(a), there is a three step inquiry in determining whether a change in residential custody should be made. First, there must be a change in the circumstances of the child or his parents. Second, the change in custody must be `necessary to serve the best interest of the child.' Finally, one of the three conditions listed in subsections (1)-(iii) must be satisfied." Nyikes v. Rhodes (July 22, 1994), Lucas App. No. L-93-363, unreported.
Here, the only one of the three conditions that might apply is whether Jessica's present environment endangered her and whether the harm caused by a change of custody was outweighed by the advantages.
To determine the best interests of a child when modifying custody, the court must then look to R.C. 3109.04
(F)(1), which provides in relevant part:
 "In determining the best interest of a child pursuant to this section, whether on an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree allocating those rights and responsibilities, the court shall consider all relevant factors, including but not limited to:
 "(a) The wishes of the child's parents regarding his care;
 "(b) If the court has interviewed the child in chambers * * *, the wishes and concerns of the child, as expressed to the court;
 "(c) The child's interaction and interrelationship with his parents, siblings, and any other person who may significantly affect the child's best interest;
 "(d) The child's adjustment to his home, school, and community;
 "(e) The mental and physical health of all persons involved in the situation;
 "(f) The parent more likely to honor and facilitate visitation and companionship rights approved by the court;
 "(g) Whether either parent has failed to make all [required] child support payments * * *;
 "(h) Whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; * * * and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;
 "(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent his or her right to visitation in accordance with an order of the court;
 "(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state."
 In Re Poling, supra, has facts similar to those in this case. In that case, the mother was awarded custody of her children as part of a divorce proceeding. A juvenile court later found the children were dependent children. The father filed a motion for custody, which the court granted.
The Supreme Court of Ohio found that the referee's report made no reference to former R.C. 3109.04(B), which has been replaced by R.C. 3109.04(E):
 "`Connie Poling has substantially complied with * * * the case plan approved by the Court. She has been consistent in her visitation, she has maintained and improved in housekeeping and she has successfully completed parenting classes. [She] exhibits good inter action with her children, is bonded with them, and is a concerned and loving parent. While [the] mother has had psychiatric problems in the past, she regularly takes medication and is faithful in her counseling. Her mental health is not a current problem. * * *
 "`There are no current indications that either parent is incapable of providing care and protection of the children. * * * Given the fact that [the] mother's location is upsetting to the children, and as the children are doing well in the father's home, it is not in their best interests, at this time, for the mother to resume custody.'" Id. at 217.
The Supreme Court of Ohio determined that "these factual determinations [fell] far short of the necessary findings required to modify custody." Id. at 217-218. The court remanded the case back to the trial court and declared that the trial court must "exercise its custody jurisdiction" pursuant to R.C.3109.04(E)(1)(a). Id. at 218.
Here, the magistrate's findings were even less than those in Poling. See In re Kennedy (1994), 94 Ohio App.3d 414,417-418. The record does not reveal whether the trial court viewed the motion as a motion to modify disposition pursuant to R.C. 2151.353 or one under R.C. 3109.04.
However, lack of specific findings is not necessarily fatal. A judgment entry may be general unless a party makes a specific request for separate findings of fact and conclusions of law. Civ.R. 52. The judgment entry must have some evidence in the record which supports the elements of the applicable statute.In re Kennedy, 94 Ohio App.3d at 417, citing Well v. Well (1990),70 Ohio App.3d 606, 609.
Despite the lack of reference to R.C. 3109.04 and the lack of specific statutory language in the judgment entry, substantial credible and competent evidence in the record sup ports the magistrate's decision to deny appellant's motion for legal custody. Appellant's motion was not just to remove Jessica from foster care, but to modify the custody situation that had existed for more than three years before SCDHS filed its motion in dependency and neglect.
Substantial credible and competent evidence in the record supports a finding that any advantages to placing Jessica with her father were outweighed by the harm such a change could cause. The magistrate stressed that the dependency and neglect case was likely nearing an end and that appellant, for whatever reason, had taken no steps to seek custody of Jessica or enforce visitation prior to the dependency and neglect proceedings.
Although the trial court ignored the recommendations of Jessica's counselor and the SCDHS caseworker that an award of legal custody of Jessica to appellant would be in her best interest, the trial court was in the best position to assess the credibility of these professionals and assign weight to their testimony.
Turning to the factors appellant contends the trial court did not consider, the record shows that both parents testified at the hearing. As a result, we cannot say the trial court did not consider the wishes of the parents regarding custody of the child.
The trial court heard two different versions of why appellant had not visited Jessica in the three years preceding the dependency and neglect proceedings. The trial court apparently resolved the conflict in evidence and issues of credibility in favor of the mother's version. Substantial evidence in the record shows the trial court considered which parent would be more likely to facilitate companionship.
The trial court was the one who found Jessica to be a neglected and dependent child. We conclude that the trial court considered that Jessica was adjudicated neglected while she was in the custodial parent's care.
Accordingly, we find substantial credible and competent evidence supports the trial court's decision to deny appellant's motion for legal custody.
When appellant filed objections to the decision, he did not complain that the magistrate's decision did not apply R.C.3109.04 or that the magistrate had not made specific findings of fact. His objections focused on the "exclusion of certain relevant facts from the magistrate's findings of facts". Like the situation in Nyikes v. Rhodes, supra, where we found that evidence supported the court's discretion in weighing the evidence, appellant contends that the trial court should have given certain testimony and evidence more weight in its analysis. For the reasons already stated, we find substantial credible evidence supports the trial court's decision and we find no abuse of discretion.
Accordingly, appellant's sole assignment of error is found not well-taken.
On consideration whereof, the court finds substantial justice has been done the party complaining, and the judgment of the Sandusky County Court of Common Pleas, Juvenile Division, is affirmed. Court costs of this appeal are assessed to appellant.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
 _______________________________ George M. Glasser, J.
JUDGE
 _____________________________ James R. Sherck, J.
JUDGE
 _______________________________ Richard W. Knepper, J.
JUDGE
CONCUR.
[1] Jessica's mother had told the caseworker she suspected appellant had sexually abused Jessica when she was an infant before they left Washington three years earlier.
[2] R.C. 2151.353(A)(3) provides: "If a child is adjudicated an abused, neglected, or dependent child, the court may make any of the following orders of disposition: * * * [a]wardlegal custody of the child to either parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child * * * "