This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Defendant-Appellant Diana L. Bland has appealed from a decision of the Summit County Court of Common Pleas, Domestic Relations Division that reallocated parental rights and responsibilities in favor of Plaintiff-Appellee Mark A. Bland. This Court affirms.
 I
{¶ 2} Diana L. Bland ("Mother") and Mark A. Bland ("Father") were married in Summit County, Ohio, on July 30, 1983. Four children were born as issue of the marriage, to wit: Adam, Seth, Noah, and Lael. Father filed for divorce on March 7, 1997. The divorce was granted on March 31, 1998, and Mother was designated as residential parent of all four children. However, Father was allowed visitation of the minor children on alternating weekends from Friday at 5:30 p.m. until Sunday at 8:00 p.m. On every week following the visitation weekend, Father was allowed companionship with the minor children on Thursday evenings at 5:30 p.m. until the following morning; on weeks not following the visitation weekend, Father was allowed companionship on Tuesday evenings from 5:30 p.m. until the following morning. Father was also ordered to pay Mother child support, in the amount of $155.27 per month, per child plus poundage, and spousal support, in the amount of $300 per month; the trial court did not retain jurisdiction over the amount or duration of spousal support.
{¶ 3} On April 6, 2000, Father filed: (1) a motion to reallocate parental rights, in which he requested the court to designate him as residential parent or to institute a shared parenting plan; (2) a motion to show cause, in which he requested the court to impose penalties against Mother for refusing to allow him visitation of the minor children, forging Father's name on a check, and causing him to miss time from work due to countless court appearances; (3) a motion to modify the beneficiary, in which he requested that the sole irrevocable beneficiary of his insurance policy be changed to the "Estate of Mark A. Bland via the Trustee of the Estate"; and (4) a motion to modify spousal support and child support, in which he requested a modification of both spousal support and child support due to a change in circumstances.
{¶ 4} In response to Father's motions, the magistrate issued a provisional order whereby she ordered Mother to begin counseling and reinstated the visitation/companionship schedule which had previously been established in the judgment entry of divorce. Mother also filed three post-decree motions on August 11, 2000, to wit: (1) a "motion for monies," in which she requested the court to order Father to pay $2,000 for an unpaid "back bill" he had previously been ordered to pay in the judgment entry of divorce, $2,000 for undue stress brought on by Father's failure to pay the "back bill," and compensation for time missed from work due to court appearances; (2) a motion for contempt, in which she alleged that Father violated the judgment entry of divorce by failing to abide by the visitation requirements of said entry; and (3) a motion requesting monies owed for schooling and orthodontic treatment of the minor children.
{¶ 5} On October 15, 2001, the magistrate ruled on the motions filed by both Mother and Father. The magistrate determined that, pursuant to R.C. 3109.04(E), a change of circumstances had occurred and recommended that it would be in the best interest of the children if Father was designated as residential parent. The court also terminated the child support order requiring Father to pay $155.27 per month, per child and ordered Mother to pay child support in the amount of $67.43 per month, per child, plus two percent processing fee. The magistrate also granted Father's motion to find Mother in contempt for interfering with visitation. The magistrate denied Father's motion to find Mother in contempt for forging his name on a check, and Father's motion requesting the court to order compensation for missed time at work; Father's motion to modify the sole irrevocable beneficiary was deemed moot.
{¶ 6} As to Mother's motions, the magistrate denied her motion requesting the court to grant her judgment against Father for $2,000 for an unpaid "back bill" and $2,000 for undue stress. The magistrate also denied Mother's motion requesting the court to order compensation for time missed at work, the motion requesting the court to find Father in contempt for failing to adhere to the visitation schedule and denying Mother the right of first refusal, and the motion requesting Father to pay for the minor child's school tuition. Mother filed objections to the magistrate's decision on March 18, 2002.[1]
{¶ 7} Upon review, the trial court adopted the magistrate's decision. However, the decision was modified to allow more liberal parenting times to Mother, and Mother's child support order was held in abeyance until the following year. Mother has timely appealed, asserting six assignments of error, some of which we have consolidated to facilitate review.
 II Assignment of Error Number One
{¶ 8} "THE TRIAL COURT ERRED IN FAILING TO RULE ON CHILD SUPPORT ARREANGES [SIC] AND PAYMENT OF MARITAL DEBT REQUIRED BY THE DECREE OF DIVORCE DATED MARCH 31, 1998[.]"
{¶ 9} In Mother's first assignment of error, she has argued that the trial court erred in failing to rule on the issue of whether Father was in arrears on his child support obligations and whether Father paid a prior marital debt, as required by the divorce decree. We disagree.
{¶ 10} We first note that Mother is incorrect when she argues that the trial court failed to resolve matters relating to the payment of child support and outstanding martial debts. The record clearly reveals that the trial court did, in fact, resolve any issues relating to those matters.
{¶ 11} The judgment entry states: "Father's child supported [sic] is terminated effective July 31, 2002. [The Child Support Enforcement Agency] shall lift Father's wage withholding order once his supportobligation is paid in full." (Emphasis added.) The trial court terminated Father's child support obligations because it designated Father as residential parent, and after July 31, 2002, Father would no longer be obligated to make future child support payments. However, the entry indicates that any monies Father currently owed to Mother in back child support must be paid before the Child Support Enforcement Agency lifts the wage withholding order. Therefore, the trial court properly addressed, and resolved, the issue regarding child support arrearages.
{¶ 12} As to Mother's argument that the trial court failed to address the matter concerning the premarital debt, specifically the payment of the Bravo Discover card, we find that the court fully addressed that issue as well.[2] The issue was brought before the trial court in Mother's "motion for monies." Initially, the magistrate denied Mother's "motion for monies" because "[i]n June 1998, Father filed a Chapter 7 Bankruptcy. The Bravo Card debt was incorporated into Father's bankruptcy." On review, the trial court also duly dispensed with the issue by denying Mother's "motion for monies."
{¶ 13} Based on the foregoing, we find Mother's argument that the trial court failed to consider or address the child support arrearages and payment of marital debt baseless. Consequently, Mother's first assignment of error lacks merit.
 Assignment of Error Number Two
{¶ 14} "THE TRIAL COURT ERRED IN ALLOWING TESTIMONY AND EVIDENCE AND CONSIDERING THE TESTIMONY AND EVIDENCE OF EVENTS THAT OCCURED [SIC] PRIOR TO THE LAST CUSTODY ORDER OF THE COURT AND HAD BEEN LITIGATED TO FINAL DETERMINATION OF CUSTODY IN JUVENILE COURT[.]"
 Assignment of Error Number Three
{¶ 15} "THE TRIAL COURT ERRED IN DETERMINING CUSTODY WHEN JURISDICTION HAD BEEN ACCEPTED BY THE SUMMIT COUNTY JUVENILE COURT AND THE JUVENILE COURT DID NOT TRANSFER JURISDICTION TO THE DOMESTIC RELATIONS COURT[.]"
{¶ 16} In Mother's third assignment of error, she has argued that the trial court erred in modifying the existing custody order because it did not have jurisdiction to do so. In her second assignment of error, she has further argued that the trial court erred when it allowed testimony and evidence relating to the custody proceedings that took place in the juvenile court. Specifically, Mother has argued that by allowing such evidence the trial court created a "retrospective change of circumstances" from the initial order issued regarding the custody of the minor children, rather than the last order issued as required by R.C.3109.04(E). We disagree.
{¶ 17} The facts pertinent to this discussion are as follows. In December 1998, Summit County Children Services Board ("CSB") filed an emergency motion alleging that the minor children of the parties were neglected and dependent children pursuant to R.C. 2151.03(A) and R.C.2151.04. The Summit County Juvenile Court issued an emergency ex parte order granting custody to CSB. The children were adjudicated dependent and neglected children on January 28, 1999.[3] At a review hearing held on June 7, 1999, the juvenile court granted Mother's motion for legal custody, and the children were placed in Mother's custody under an order of protective supervision. The juvenile court terminated all orders in October 1999.
{¶ 18} Mother has contended that because the juvenile court granted her legal custody of the parties' minor children, the trial court did not have jurisdiction to decide whether there should be a change in custody. This argument, however, lacks merit in light of the Ohio Supreme Court's ruling in In re Poling (1992), 64 Ohio St.3d 211. The issue before the court in Poling was whether a juvenile court had jurisdiction to determine the custody of dependent children, where custody had previously been determined and granted under a prior divorce decree. The court concluded, "a court which renders a custody decision in a divorce case has continuing jurisdiction to modify that decision. However, the juvenile court has jurisdiction to make custody awards under certain circumstances. Hence, for the purposes of deciding custody where there has been a prior divorce decree, these courts can accurately be said to have concurrent jurisdiction[.]" (Emphasis added.) Poling,64 Ohio St.3d at 215.
{¶ 19} In the case sub judice, the custody of the minor children was initially decided in the divorce decree; therefore, the trial court retained continuing jurisdiction over any matters relating to the custody of the children. Id.; Loetz v. Loetz (1980), 63 Ohio St.2d 1, 2 ("The court in which a decree of divorce is originally rendered retains continuing jurisdiction over matters relating to the custody, care, and support of the minor children of the parties."). However, pursuant toPoling, the juvenile court also had jurisdiction over matters relating to the custody of the minor children once CSB filed a complaint alleging them to be dependent children pursuant to R.C. 2151.23.
{¶ 20} As both courts had jurisdiction to determine the custody of the minor children, we reject Mother's argument that because the "[j]uvenile court had not transferred or relinquished jurisdiction over the subject matter to the Summit County Domestic Relations Court" the trial court did not have jurisdiction to hear the matter. In addition, we conclude that because custody of the children was initially determined in the trial court, and the juvenile court abandoned jurisdiction over the children in October 1999, the trial court had the right to reach a final decision upon the custody of the parties' children. See Loetz,63 Ohio St.2d at 2; State ex rel. Balson v. Harnishfeger (1978), 55 Ohio St.2d 38,39, quoting Miller v. Court of Common Pleas (1944), 143 Ohio St. 68, 70
("[A]s between courts of concurrent and coextensive jurisdiction, the one whose power is first invoked by the institution of proper proceedings and the service of the required process acquires the right to adjudicate upon the whole issue and to settle the rights of the parties to the exclusion of all other tribunals. This rule obtains in divorce actions.").
{¶ 21} Having concluded that the trial court had jurisdiction to determine the custody of the minor children, we now address the trial court's decision to modify the existing custody order pursuant to R.C.3109.04(E). R.C. 3109.04(E) governs the modification of a previous order allocating parental rights and provides, in pertinent part:
{¶ 22} "The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, his residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child." R.C. 3109.04(E)(1)(a).
{¶ 23} In determining whether there is a change in circumstances warranting a modification of parental rights and responsibilities, the trial court must make such a finding "based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree." (Emphasis added.) R.C. 3109.04(E)(1)(a). In other words, in reviewing whether a change in circumstances has occurred, the trial court should look at facts or events that took place after the prior decree. Mother has argued that the "prior decree" which the trial court should have used in attempting to determine whether there was a change in circumstances was the June 1999 juvenile court order, which was the last post decree order regarding the custody of the minor children. Thus, Mother has contended that "[a]ny change of circumstances considered [should] be from June 1999 to the filing of [Father's] motion for custody dated April 2000[.]"
{¶ 24} The trial court did not use the June 1999 juvenile court order as the "prior decree" from which to determine whether a change of circumstances had occurred. Rather, the trial court used the March 31, 1998 divorce decree as the "prior decree," and reviewed all facts or events that occurred after March 1998. Mother has argued that the trial court erred by using facts and events that occurred after the March 1998 divorce decree. She has argued that the trial court should have considered only facts that arose from June 1999 to April 2000, rather than viewing facts that arose from March 1998 to April 2000. It appears that Mother has also argued that the trial court was barred from hearing any custody issues that occurred from March 31, 1998 (the date the parties were divorced) to October 1999 (the date CSB terminated its orders) because those issues had been fully litigated to final determination in the juvenile court, and thus the doctrine of res judicata barred relitigation of those issues.
{¶ 25} A review of the record reveals that the parties never filed a copy of the June 1999 juvenile court order with the trial court. Although the trial court refers to the proceedings that occurred in the juvenile court regarding the custody of the minor children, there is no evidence in the record that such proceedings actually took place. Therefore, this Court is unable to pass upon whether the June 1999 juvenile court order is the "prior decree" from which the trial court should have determined the change in circumstances. As there is no such decree in the record, the trial court appropriately used the March 1998 divorce decree as the "prior decree" from which to determine whether there was a change in circumstances warranting a change in custody.[4]
Therefore, any facts that occurred between March 1998 and June 1999 were properly before the trial court.
{¶ 26} Based on the foregoing reasons, we find that Mother's second and third assignments of error lack merit.
 Assignment of Error Number Four
{¶ 27} "THE TRIAL COURT ABUSED IT'S [SIC] DISCRETION AND AUTHORITY BY REFUSING A FINDINGS OF FACT AND CONCLUSIONS OF LAW, EXPRESSING THE COURTS [SIC] DESIRE THE [SIC] THE [MOTHER] NOT TO APPEAL THE CASE AND STATING THE COURT WOULD DENY A STAY OF EXECUTION PRIOR TO ANY MOTION BEING FILED[.]"
{¶ 28} In Mother's fourth assignment of error, she has argued that the trial court abused its discretion and authority when it adopted the magistrate's decision because Mother refused to accept the shared parenting plan presented to the court by Father. She has further argued that it was an abuse of discretion for the trial court to refuse a request for findings of fact and conclusions of law, and to inform Mother that it would deny her motion for stay of execution of judgment ("motion for stay") if filed. We disagree.
{¶ 29} In attempting to review Mother's fourth assignment of error, this court finds that our task has been unduly complicated because of Mother's failure to comply with App.R. 16(A)(3) and (7).[5]
That is, Mother has failed to include in her brief:
{¶ 30} "(3) A statement of the assignments of error presented for review, with reference to the place in the record where each erroris reflected.
{¶ 31} "***
{¶ 32} "(7) An argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellantrelies. The argument may be preceded by a summary." (Emphasis added.) App.R. 16(A)(3) and (7).
{¶ 33} Additionally, Mother has failed to comply with App.R. 16(D) and Loc.R. 7(E). App.R. 16(D) provides in pertinent part: "References in the briefs to parts of the record shall be to the pages of the parts of the record involved[.]" Loc.R. 7(E) states:
{¶ 34} "References to the pertinent parts of the record shall be included in the statement of facts and in the argument section of the brief. If a party fails to include a reference to a part of the record that is necessary to the court's review, the court may disregard the assignment of error or argument. References must be sufficiently specific so as to identify the exact location in the record of the material to which the court must refer[.]"
{¶ 35} Because Mother has failed to file a complying brief, this Court may disregard Mother's assignment of error pursuant to App.R. 12(A)(2). However, in the interests of justice, we will decide the assignment of error on its merits; therefore, we have located, and reviewed, the relevant portions of the trial transcript pertinent to Mother's arguments. After reviewing the record, however, we are not persuaded by Mother's arguments.
{¶ 36} First, the trial court was not attempting to "penalize" Mother by adopting the magistrate's decision because of Mother's refusal to accept the trial court's proposed shared parenting plan. The record reveals that the trial court adopted the magistrate's shared parenting plan because it did not believe that the shared parenting plan submitted by Mother was equitable. In fact, during the July 12, 2002 hearing, the trial court stressed on several occasions that it unsuccessfully attempted to work with both parties to reach an agreeable shared parenting plan. Because of the trial court's lack of success in getting the parties to work together, it simply chose the fairest shared parenting plan, which was the shared parenting plan submitted by Father. The court explained:
{¶ 37} "[The Court]: I would hope you would stop the litigation and move ahead in your lives because, I mean, even if you are residential parent, this would be what [Father] wanted. That is what he asked for.
{¶ 38} "I literally tried to sit down here with [Mother] and tried to help you to workout a shared parenting plan.
{¶ 39} "[Mother]: I presented [a shared parenting plan]. You didn't accept it.
{¶ 40} "[The Court]: I didn't because I didn't think it was liberal and you hadn't shown me in good faith that you would see these children had quality times with their father.
{¶ 41} "The important thing is that these children have a good relationship with their Dad and you have a good relationship with them, but you want [Father] to have a good relationship, too. So, that's what that is all about, that he takes the responsibility in most of this and sees that you have — you have the time, and I'm sure that you will."
{¶ 42} It is obvious from the trial court's conversation with Mother that the trial court did not insist that "the mother of four children to [sic] agree to an [unacceptable shared parenting plan] or lose custody." The trial court's decision to adopt the magistrate's shared parenting plan was not based on Mother's uncooperative attitude. Rather, the court's decision was made pursuant to R.C. 3109.04. Moreover, the shared parenting plan adopted by the trial court allowed both parties equal time with the children.
{¶ 43} We also find the trial court's request that the parties "end all litigation" was not made in an effort to frustrate Mother's attempts to continue litigation. A further review of the record reveals that the trial court was concerned for the children's welfare, and it believed that any continued litigation would further contribute to an already deteriorating relationship between the children and Father.
{¶ 44} As to Mother's claim that the trial court somehow abused its discretion or authority by informing the parties that it would deny any motion for stay filed by Mother, we find that the trial court was simply replying to a concern expressed by Mother.
{¶ 45} During the July 22, 2002 hearing, Mother told the court: "I don't want to see this get into a situation like there was when [the magistrate's] order came out where there's a 14 day stay if the objection is filed." The trial court responded to Mother's concerns over any interruption of the shared parenting plan by stating: "Only the court of appeals could stay this. The procedure is this: If they appeal it, you need an attorney. You need to get an attorney.
{¶ 46} "I'll deny a stay. I really want this to go into effect. So, I'll deny it but you'll have to still, in writing, give that to me. I'll deny it but you'll have to still, in writing, give that to me. I'll then deny it. Then they go to the court of appeals to see if the court of appeals may grant it.
{¶ 47} "I have no control over the court of appeals. Both of you have an appeal issue. You have the appeal issue that this is too liberal and it's not what you wanted, and you also have the issue as to there's no child support.
{¶ 48} "***
{¶ 49} "I don't know whether [the court of appeals] will stay it or not stay, but I can tell you, I'm not going to stay it any more. Then it's up to [the court of appeals]."
{¶ 50} It is clear that the court was attempting to explain the appellate process to Mother. Although the trial court was frank, and rather adamant, when it told Mother that it would deny any motion for stay, Mother has failed to show that she was prejudiced by the court's comments. Despite the court's promise to deny any motion for stay, Mother filed a motion for stay on August 21, 2002. Apparently Mother was not daunted by the trial court's attitude; therefore, she was not prejudiced by the court's promise to deny a motion for stay.
{¶ 51} As to Mother's argument that the trial court abused its discretion in denying her request for findings of fact and conclusions of law, we conclude that the trial court, did in fact, issue findings of fact and conclusions of law pursuant to Civ.R. 52.
{¶ 52} Civ.R. 52 provides, in pertinent part:
{¶ 53} "When questions of fact are tried by the court without a jury, judgment may be general for the prevailing party unless one of the parties in writing requests otherwise before the entry of judgment pursuant to Civ.R. 58, or not later than seven days after the party filing the request has been given notice of the court's announcement of its decision, whichever is later, in which case, the court shall state in writing the conclusions of fact found separately from the conclusions of law."
{¶ 54} Pursuant to Civ.R. 52, findings of fact and conclusions of law are only required for judgments and are unnecessary upon all other motions except for those filed pursuant to Civ.R. 41(B)(2). State exrel. Papp v. James (1994), 69 Ohio St.3d 373, 378. However, Civ.R. 52, "applies to change of custody proceedings which involve questions of fact tried and determined by the court without a jury." Werden v. Crawford
(1982), 70 Ohio St.2d 122, syllabus.
{¶ 55} In the case sub judice, Mother requested findings of fact and conclusions of law during the July 22, 2002 hearing. During the hearing, counsel for Mother stated: "I'll say I'm going to be filing a [motion for] Findings of Fact and Conclusions of Law." The trial court responded: "I did my facts and conclusion of law. I think [the magistrate] did. So, I would be denying that [motion]." Despite the fact that the trial court denied Mother's request for findings of fact and conclusions of law, the trial court issued specific findings of fact and conclusions of law. Therefore, Mother's argument that the trial court refused to issue findings of fact and conclusions of law is baseless.
{¶ 56} In sum, we find that the trial court did not abuse its discretion when it denied Mother's request for findings of fact and conclusions of law, nor did the trial court abuse its authority when it expressed its desire that Mother discontinue any further litigation and informed Mother that it would deny a motion for stay prior to the motion being filed. Consequently, we find that Mother's fourth assignment of error lacks merit.
 Assignment of Error Number Five
{¶ 57} "THE TRIAL COURT ERRED AND ABUSED IT'S [SIC] DISCRETION BY RULING A GUART [SIC] THE MANUFEST [SIC] WEIGHT OF EVIDENCE[.]"
{¶ 58} In Mother's fifth assignment of error, she has argued that the trial court abused its discretion when it reallocated parental rights to Father. We disagree.
{¶ 59} As discussed above, R.C. 3109.04 governs the modification of a prior order allocating parental rights. Pursuant to R.C. 3109.04(E), a trial court may only modify a prior decree allocating parental rights and responsibilities if (1) there is a change in circumstances; (2) a modification is deemed to be in the best interests of the child; and (3) one of the following:
{¶ 60} "(i) The residential parent agrees to a change in the residential parent or both parents under a shared parenting decree agree to a change in the designation of residential parent.
{¶ 61} "(ii) The child, with the consent of the residential parent or of both parents under a shared parenting decree, has been integrated into the family of the person seeking to become the residential parent.
{¶ 62} "(iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child." R.C. 3109.04(E)(1)(a).
{¶ 63} The threshold question in deciding to modify a prior decree allocating parental rights and responsibilities is whether there has been a change in circumstances. See Riggle v. Riggle (Oct. 16, 2002), 9th Dist. No. 02CA0015, 2002-Ohio-5553, ¶ 8. In determining whether a change of circumstance has occurred, "the change must be a change of substance, not a slight or inconsequential change." Davis v. Flickinger
(1997), 77 Ohio St.3d 415, 418. Thus, a trial court must have wide latitude in considering all the evidence before it in determining whether a change has occurred, and an appellate court will not disturb a trial court's finding absent an abuse of discretion. Davis, 77 Ohio St.3d 415, paragraphs one and two of the syllabus. The court in Davis explained the standard for abuse of discretion in custody cases:
{¶ 64} "`Where an award of custody is supported by a substantial amount of credible and competent evidence, such an award will not be reversed as being against the weight of the evidence by a reviewing court.'" (Citations omitted.) Davis, 77 Ohio St.3d at 418, quotingBechtol v. Bechtol (1990), 49 Ohio St.3d 21, syllabus.
{¶ 65} In the instant case, the trial court concluded that a change in circumstances had occurred. After the parties were finally divorced in March 1998, and Mother was designated as residential parent, the trial court noted that Mother continuously interrupted Father's visitation and companionship with the children. When Father was scheduled to have all four minor children for the Christmas break, for example, Mother kept two of the younger children, while allowing the two older children to visit with Father — this was done in contravention of the court-ordered schedule. Such actions on the part of Mother constitute a "change in circumstances" warranting a change in custody. See Holm v.Smilowitz (1992), 83 Ohio App.3d 757, 773 ("[A] custodial parent's interference with visitation by a noncustodial parent may be considered as part of a `change of circumstances' which would allow for modification of custody.")
{¶ 66} As there was sufficient evidence to show that a change in circumstances occurred after the March 1998 divorce decree, this Court must next determine whether a change in custody was in the best interest of the children. R.C. 3109.04(F)(1) provides a list of factors a trial court should consider in determining whether a change in custody would be in the best interest of the child. R.C. 3109.04(F)(1) provides, in pertinent part:
{¶ 67} "In determining the best interest of a child pursuant to this section *** the court shall consider all relevant factors, including, but not limited to:
{¶ 68} "(a) The wishes of the child's parents regarding his care;
{¶ 69} "(b) If the court has interviewed the child in chambers pursuant to [R.C. 3109.04(B)] regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
{¶ 70} "(c) The child's interaction and interrelationship with his parents, siblings, and any other person who may significantly affect the child's best interest;
{¶ 71} "(d) The child's adjustment to his home, school, and community;
{¶ 72} "(e) The mental and physical health of all persons involved in the situation;
{¶ 73} "(f) The parent more likely to honor and facilitate visitation and companionship rights approved by the court;
{¶ 74} "(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;
{¶ 75} "(h) Whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child ***;
{¶ 76} "(i) Whether the residential parent *** has continuously and willfully denied the other parent his or her right to visitation in accordance with an order of the court;
{¶ 77} "(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state."
{¶ 78} The record clearly shows that the trial court considered the factors listed in R.C. 3109.04(F)(1) when it determined the best interest of the children. Although the children expressed a desire to stay with Mother, see R.C. 3901.04(F)(1)(b), this is not the only factor a trial court must consider in determining what is in the best interest of the children. The trial court observed that both parties desired to be the residential parent, and that the children appeared to have a healthy interaction with both parties. R.C. 3901.04(F)(1)(a) and (c). The court also noted that the children did not attend school in Mother's neighborhood. R.C. 3901.04(F)(1)(d). The court expressed concern over the children's mental health because of the long, drawn out litigation that they have endured since the parties divorce; the court was also concerned about the mother's mental health and present state of unemployment. R.C.3901.04(F)(1)(e). The court believed that Father would be more likely to honor and facilitate court-approved parenting time in light of Mother's history of interference with Father's visitation rights. R.C.3901.04(F)(1)(f). The court noted that Father was not in arrears in his child support obligation. R.C. 3901.04(F)(1)(g). The court further discussed a prior domestic violence charge that Father had for assaulting Mother and prior proceedings that took place in juvenile court. R.C.3901.04(F)(1)(h). The court concluded, however, that the prior juvenile proceedings and the sole domestic violence charge were isolated events. The court also found that Mother had continuously and willfully denied Father the right to parenting time. R.C. 3901.04(F)(1)(i). Finally, the court noted that both parents have established residences in Summit County. R.C. 3901.04(F)(1)(j).
{¶ 79} After considering all the factors listed in R.C.3901.04(F)(1), the court concluded that it would be in the best interest of the children to modify the existing child support order, especially in light of the fact that Mother prevented Father from spending quality time with the children. See Davis, 77 Ohio St.3d at 419 ("When one parent begins to cut out another parent, especially one that has been fully involved in that child's life, the best interest of the child is
materially affected." (Emphasis sic.))
{¶ 80} The trial court next considered whether "[t]he harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child." R.C. 3109.04(E)(1)(a)(iii). It concluded that the harm likely to be caused by a change of environment was outweighed by the advantages of the change of environment to the children. The court observed that "the parties' three sons, ages 12, 14, and 16 are more in need of a positive, involved, and caring Father during these teen age years."
{¶ 81} Because the record amply reveals that there was a change in circumstances warranting a modification of the prior order, and the trial court properly considered the factors contained in R.C. 3109.04(F)(1) in determining the best interest of the children and determined that the harm likely to be caused by a change of environment was outweighed by the advantages of the change of environment to the children, we cannot conclude that the trial court abused its discretion in modifying the custody order.
{¶ 82} On another matter, we address Mother's arguments regarding certain testimony and documents the trial court allowed into evidence. Mother has argued that the trial court abused its discretion by admitting documents and testimony relevant to the time period prior to the last custody order, and that such evidence should have been excluded.[6] She has further contended that the only "competent[,] relevant information provided to the court was the reports prepared by the court and court appointed GAL, all of which indicated [Mother] should remain residential parent[,]" and that "the Magistrate had a bias against [Mother] as a result of the Juvenile Court involvement, and the proceedings and decision are repletere [sic] with abuses and fundamental errors to somehow justify a decision that is erroneous based on Law and procedure."
{¶ 83} As we discussed in our discussion of assignments of error number two and three, any testimony and documents pertaining to matters that occurred before the June 1999 juvenile court order were admissible. Consequently, Mother's fifth assignment of error lacks merit.
 Assignment of Error Number Six
{¶ 84} "THE TRIAL COURT ERRED AND ABUSED IT'S [SIC] DISCRETION IN FAILING TO FACTOR [FATHER'S] HISTORY OF DOMESTIC VIOLENCE[.]"
{¶ 85} In Mother's sixth assignment of error, she has argued that the trial court abused its discretion when it failed to consider Father's history of domestic violence when it modified the existing child custody order. We disagree.
{¶ 86} As an initial matter, we note that Father was only charged once with domestic violence. Although we believe that such an offense is intolerable, a single offense does not constitute a "history" of domestic violence. In any event, the record reveals that the trial court considered Father's domestic violence charge in determining whether a modification of the prior custody order was in the best interest of the children. The trial court explained that the domestic violence charge was in the past, and it was an isolated event that appeared to have been resolved. Therefore, Mother's sixth assignment of error is without merit.
 III
{¶ 87} Mother's six assignments of error are overruled. The judgment of the trial court is affirmed.
BAIRD, P.J. and BATCHELDER, J. CONCUR
[1] Mother timely filed pro se objections on October 29, 2001. Trial counsel, however, filed a motion for extension of time in which to file objections to the magistrate's decision on October 29, 2001. Before the magistrate could grant an extension, trial counsel withdrew because Mother obtained new counsel to represent her in the matter. A second motion for extension of time to file objections was filed on March 1, 2002.
[2] It is not clear what Mother means when she refers to "premarital debt." We assume that she is referring to the "back bill" listed in her "motion for monies," in which she requested a judgment against Father for "failure to pay back bill as ordered in Article 4 of Divorce Decree. $2,000." Although Mother does not state which "back bill" Father failed to pay, Article 4 of the divorce decree ordered Father to pay $2,188 on a Bravo card. The magistrate and trial court reasonably assumed that the "back bill" Mother was referring to was the Bravo card. Therefore, we assume, as did the magistrate and trial court, that Mother is referring to the Bravo card when she argues that the "premarital debt" has not been paid.
[3] It is not clear whether the minor children remained in the custody of CSB or in the Father's custody. Mother has claimed the children were placed with the Father during this time, but Father has contended that the children remained in the custody of CSB. The trial court, however, stated in its decision that "[t]he children remained with father for the remainder of the school year."
[4] Even assuming the June 1999 juvenile order is the "prior decree" from which the trial court should determine whether a change of circumstances occurred, the trial court still has the right to review any facts "that were unknown to the court at the time of the prior decree." Thus, if the juvenile court did not know about any of the facts that occurred after the divorce, but before the June 1999 juvenile court order, the trial court could properly consider those facts as well.
[5] On several occasions, Mother has cited to conversations that took place between the court and the parties during the July 22, 2002 hearing on the parties' motions. However, she has failed to identify what part of the record she is citing. In one instance, Mother did cite to: "Trial Transcript, July 22, 2002, page 5." However, the portion of the court's conversation quoted by Mother in her brief did not correspond to page 5 of the July 22, 2002 trial transcript. Furthermore, it appears that Mother has provided incomplete and altered portions of the July 22, 2002 hearing.
[6] Mother has failed to specifically describe the testimony and documents that she believes should not have been allowed into evidence; nor has she directed this Court to the parts of the record where she believes the error occurred. She simply refers to evidence "relevant to the time period prior to the last custody order."