OPINIONS OF THE SUPREME COURT OF OHIO
     The full texts of the opinions of the Supreme Court of
Ohio are being transmitted electronically beginning May 27,
1992, pursuant to a pilot project implemented by Chief Justice
Thomas J. Moyer.
     Please call any errors to the attention of the Reporter's
Office of the Supreme Court of Ohio.  Attention:  Walter S.
Kobalka, Reporter, or Justine Michael, Administrative
Assistant.  Tel.:  (614) 466-4961; in Ohio 1-800-826-9010.
Your comments on this pilot project are also welcome.
     NOTE:  Corrections may be made by the Supreme Court to the
full texts of the opinions after they have been released
electronically to the public.  The reader is therefore advised
to check the bound volumes of Ohio St.3d published by West
Publishing Company for the final versions of these opinions.
The advance sheets to Ohio St.3d will also contain the volume
and page numbers where the opinions will be found in the bound
volumes of the Ohio Official Reports.

     In re Poling et al., Alleged Dependent Minors.

     [Cite as In re Poling (1992),     Ohio St.3d    .]

     Courts -- Juvenile court has jurisdiction to determine
          custody of child alleged to be abused, neglected or
          dependent, when -- R.C. 2151.23(F)(1), construed and
          applied.

     1.  Pursuant to R.C. 2151.23(A), the juvenile court has
         jurisdiction to determine the custody of a child
         alleged to be abused, neglected, or dependent, when
         that child is not the ward of any court in this
         state.  This jurisdiction includes children subject to
         a divorce decree granting custody pursuant to R.C.
         3109.04.1

     2.  When a juvenile court makes a custody determination
         under R.C. 2151.23 and 2151.353, it must do so in
         accordance with R.C. 3109.04.  (R.C. 2151.23[F][1],
         construed and applied.)

     (No. 91-1315 -- Submitted May 12, 1992 -- Decided July 22,
1992.)

     Appeal from the Court of Appeals for Franklin County, No.
91AP-8.

     Charles Poling, Sr., appellant, and Connie Poling,
appellee, were married in 1982.  Two children were born of the
marriage:  Charles, Jr., on September 6, 1982, and Mary, on
November 29, 1983.  In 1987, Charles, Sr. abandoned his wife
and two children to live with another woman in Arizona, and
then later in Florida.  During this time, Connie provided for
the care and support of the children.  Connie and Charles, Sr.
were eventually divorced, with custody being granted to her
pursuant to former R.C. 3109.04.  It is undisputed that the
custody determination was made as part of the divorce decree
entered by the Franklin County Common Pleas Court, Domestic
Relations Division.

     On September 21, 1989 Franklin County Children Services
("F.C.C.S.") filed a neglect and dependency action in the
Franklin County Juvenile Court, alleging lack of proper
parental care for and supervision of Mary and Charles, Jr.
According to F.C.C.S., the custodial parent left the children
unsupervised at various times.  Apparently, school security

brought Mary to F.C.C.S. because Connie was not at home when the child returned from school on September 20. F.C.C.S. also confirmed that Charles, Jr. was left unattended that same day, and that school officials previously reported a similar incident. A temporary order of custody was issued to F.C.C.S. on September 22, 1989. On or about that date, F.C.C.S. placed the physical custody of both children with Charles, Sr., who was by then living in Ohio, and the children have continued to live with him and his new family since that time.

While the action in neglect and dependency was pending, F.C.C.S. and the Columbus police investigated charges of sexual abuse of Mary and possibly Charles, Jr., allegedly involving Connie's neighbor and friend. The neighbor was arrested and convicted of criminal charges; he is now deceased. Evidence in the record suggests that Connie was not aware of any sexual abuse of her children, and there was never a factual finding to the contrary. The prosecution dismissed the neglect count and an uncontested hearing on the dependency action was held before a referee on December 11, 1989. The referee recommended that the court find by clear and convincing evidence that both Mary and Charles, Jr. were "dependent minor children" as defined in R.C. 2151.04(C). The referee also recommended that Charles, Jr. and Mary be made wards of the court and that F.C.C.S. be awarded temporary custody of both children, said custody to continue until further order of the court. The juvenile court adopted the recommendation in a judgment entry filed December 29, 1989.

In January 1990, Charles, Sr. filed a motion for a reevaluation of custody, and Connie likewise filed a motion for custody. Both motions were denied by the juvenile court. However, on June 6, 1990, F.C.C.S. filed a motion requesting the juvenile court to exercise its continuing jurisdiction to terminate the temporary custody order and grant custody of the children to Charles Poling, Sr. After a three-day hearing, the referee, in September 1990, recommended that custody be awarded to Charles, Sr. Connie filed objections to the report and recommendation of the referee. The objections were overruled and the juvenile court adopted the recommendation that legal custody be awarded to Charles, Sr. The juvenile court sustained an objection as to the issue of visitation and granted Connie visitation every other weekend and one month in the summer.

Upon appeal, the court of appeals reversed, holding that although the juvenile court had jurisdiction to terminate the temporary custody of F.C.C.S., under the facts of this case the juvenile court was not within its jurisdiction to enact a change of custody and grant legal custody to Charles, Sr. The appellate court reasoned that since the parties were once married and Connie had been granted legal custody pursuant to former R.C. 3109.04, "legal custody can only be granted to [Charles, Sr.] * * * pursuant to a change of custody as prescribed in R.C. 3109.04(B)." Moreover, that court determined that the record was devoid of any indication that the juvenile court acquired jurisdiction over the custody matter of this case by virtue of certification as set forth in R.C. 2151.23(D). The court of appeals concluded that "[t]he effect of the trial court's disposition of this case was to

grant a change of custody pursuant to R.C. 3109.04(B) when it had no authority or jurisdiction to make that disposition."

The cause is now before this court pursuant to the allowance of a motion to certify the record.

Raymond L. Eichenberger, for appellant.
Eric J. Hoffman, for appellee.
James Kura, County Public Defender, and Paul Skendellas, guardian ad litem, for Charles, Jr. and Mary Poling.

Alice Robie Resnick, J.  The issue before this court is whether a juvenile court has jurisdiction to consider the question of custody of dependent children, where custody has previously been determined and granted under a divorce decree pursuant to R.C. 3109.04.  Appellant asserts that R.C. 2151.23 confers upon the juvenile court exclusive jurisdiction over the disposition of dependent children.  The guardian ad litem supports this position, and also contends that pursuant to R.C. 2151.353 a juvenile court has jurisdiction to make an award of legal custody concerning any child who has been adjudicated a dependent minor.

Our analysis begins with R.C. 2151.23, which governs the jurisdiction of the juvenile court and provides in pertinent part:

"(A)  The juvenile court has exclusive original jurisdiction under the Revised Code:

"(1)  Concerning any child who on or about the date specified in the complaint is alleged to be a[n] * * * abused, neglected, or dependent child;

"(2)  To determine the custody of any child not a ward of another court of this state[.]"  (Emphasis added.)

According to the plain language of R.C. 2151.23(A)(1), the juvenile court had exclusive original jurisdiction concerning Charles, Jr. and Mary once a complaint was filed alleging them to be dependent children.  In other words, under R.C. 2151.23(A)(1), the juvenile court was vested with jurisdiction to hear and determine the allegations in the complaint and to make a lawful disposition concerning Charles, Jr. and Mary (provided that they were not wards of another court of the state).  R.C. 2151.353(A) involves the disposition of abused, neglected or dependent children, and states in pertinent part: "If a child is adjudicated an abused, neglected or dependent child, the court may make any of the following orders of disposition:  * * *."  The statute proceeds to list five ways in which a juvenile court may determine the custody, care and supervision of the children.  The question then becomes whether a disposition under R.C. 2151.353 concerning a dependent child may include a change of custody where custody has previously been determined in a divorce action pursuant to R.C. 3109.04.

In this context, R.C. 2151.23(A)(2) provides some guidance.  We initially note that this court has previously held that the grants of jurisdiction in R.C. 2151.23(A)(1) and (A)(2) are independent of each other, and that "[i]n order to determine * * * custody, it is not necessary for the [juvenile] court to find first that such child is * * * dependent * * *. In re Torok (1954), 161 Ohio St. 585, 53 O.O. 433, 120 N.E.2d 307, at paragraph two of the syllabus.  When read literally,

R.C. 2151.23(A)(2) states that "[t]he juvenile court has exclusive original jurisdiction under the Revised Code * * * [t]o determine the custody of any child not a ward of another court of this state[.]"  For our purposes the key phrase in R.C. 2151.23(A)(2) is "a ward of another court."  If children whose custody is determined under a divorce decree, pursuant to R.C. 3109.04, are construed to be "wards" of that court, then a juvenile court would not have jurisdiction to determine their custody under R.C. 2151.23(A)(2).  However, for the reasons which follow, we do not construe the term "ward" to include children whose custody is granted pursuant to a divorce decree.

Generally, a "ward" is "[a] person, especially a child or incompetent, placed by the court under the care and supervision of a guardian or conservator."  "Wards of the court" are "[i]nfants and persons of unsound mind placed by the court under the care of a guardian."  Black's Law Dictionary (6 Ed. 1990) 1583-1584.  A ward is commonly associated with a guardianship, which is "* * * established because of the ward's inability to legally act on his or her own behalf * * *."  Id. at 707, defining "guardianship."  When a court in a divorce case grants custody of a child, the court is not traditionally placing itself in the position of guardian of that child.  Rather, in a broad sense the court is making a judicial determination as to whom the child's custodian is to be, whether it be a parent or otherwise.  Nor does the court consider the child a "ward" of that court, even though the court retains jurisdiction to modify custody and support.  Hence, we conclude that the phrase any child not a "ward of another court" in R.C. 2151.23(A)(2) cannot be construed to prohibit a juvenile court from changing custody of children subject to a divorce decree entered pursuant to former R.C. 3109.04.  Such an interpretation would strain the definition of "ward" well beyond its common meaning.

Based on the above, a juvenile court has jurisdiction under R.C. 2151.23(A)(1) and 2151.353, respectively, to determine the disposition, including custody, of children alleged to be abused, neglected, or dependent.  We hold that pursuant to R.C. 2151.23(A), the juvenile court has jurisdiction to determine the custody of a child alleged to be abused, neglected, or dependent when not the ward of any court in this state.  Under our interpretation of subdivision (A)(2) of R.C. 2151.23, this jurisdiction includes children subject to a divorce decree granting custody pursuant to R.C. 3109.04.

While clarifying the jurisdiction of the juvenile court under R. C. 2151.23, we recognize some confusion exists in light of the continuing jurisdiction of the domestic relations court which awards custody in divorce cases under R.C. 3109.04.  Particularly, this becomes apparent when considering the case of Loetz v. Loetz (1980), 63 Ohio St.2d 1, 2, 17 O.O.3d 1, 406 N.E.2d 1093, 1094, wherein we reiterated that "[t]he court in which a decree of divorce is originally rendered retains continuing jurisdiction over matters relating to the custody, care, and support of the minor children of the parties.  Hoffman v. Hoffman (1864), 15 Ohio St. 427; Addams v. State ex rel. Hubbell (1922), 104 Ohio St. 475, 135 N.E. 667; Corbett v. Corbett (1930), 123 Ohio St. 76 [9 Ohio Law Abs. 58], 174 N.E. 10; Van Divort v. Van Divort (1956), 165 Ohio St.

141 [59 O.O. 207], 134 N.E.2d 715."

Therefore, a court which renders a custody decision in a divorce case has continuing jurisdiction to modify that decision. However, the juvenile court has jurisdiction to make custody awards under certain circumstances. Hence, for the purposes of deciding custody where there has been a prior divorce decree, these courts can accurately be said to have concurrent jurisdiction. In other words, the juvenile court may entertain and determine custody of children properly subject to its jurisdiction, even though there has been a prior divorce decree granting custody of said children to a parent pursuant to R.C. 3109.04.2

Both appellant and the guardian ad litem advance judicial economy arguments to buttress their assertion that the juvenile court has jurisdiction to decide the custody issue in this case. They contend the juvenile court is in a position to hear all the relevant evidence concerning the child's environment and needs, and that it is a waste of judicial time and resources to then require additional hearings in the original divorce court to determine custody of the children.

We agree. The issues and facts relating to the disposition or custody of these children will have been examined in the juvenile court. In deciding how to best address the needs and interests of the children, the juvenile court would have before it home investigations germane to the case, psychological assessments, special educational or treatment concerns, relevant testimony from the pertinent parties, and the recommendation of both the county children services agency and the guardian ad litem. To now hold that the juvenile court does not have jurisdiction would require the original divorce court to possibly rehear the entire case, at a considerable cost not only to the judicial system but more importantly to the parties involved. This is especially true with respect to children whose well-being mandates an effective, timely means of resolving their care and custody.

However, when a juvenile court seeks to exercise its concurrent jurisdiction in a situation such as before us, i.e., where there is an existing custody decree, the juvenile court must do so in compliance with R.C. 2151.23(F)(1). This statute requires that "[t]he juvenile court shall exercise its jurisdiction in child custody matters in accordance with sections 3109.04, 3109.21 to 3109.36, * * * of the Revised Code." (Emphasis added.) Therefore, when a juvenile court makes a custody determination, it must do so "in accordance with R.C. 3109.04."

We view this legislative scheme as a means of granting the juvenile court jurisdiction to make particularized determinations regarding the care and custody of children subject to its jurisdiction, while respecting the continuing jurisdiction of the domestic relations or common pleas court that makes a custody decision in a divorce case. Stated otherwise, when a domestic relations or common pleas court makes a custody decision ancillary to a divorce proceeding, that court must comply with the strictures contained in R.C. 3109.04. Likewise, under R.C. 2151.23(F)(1), a juvenile court must consider the dictates of R.C. 3109.04 when exercising its custody jurisdiction. The juvenile court's custody decision is

thus harmonized with the prior custody determination by the requirement in R.C. 2151.23(F)(1) that the juvenile court exercise its custody jurisdiction in accordance with R.C. 3109.04.

In the present case Connie Poling was awarded custody of Charles, Jr. and Mary under the divorce decree. Former R.C. 3109.04(B) -- which is now essentially R.C. 3109.04(E)(1)(a) -- controls the modification of a custody determination granted as part of a divorce proceeding. R.C. 2151.23(F)(1) requires the juvenile court to exercise its custody jurisdiction "in accordance with" former R.C. 3109.04. Specifically relevant to this case is former R.C. 3109.04(B)(1), which provided in part:

"Except as provided in division (B)(2) of this section, the court shall not modify a prior custody decree unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, his custodian, or either joint custodian, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the custodian or both of the joint custodians designated by the prior decree, unless one of the following applies:

"(a) The custodian or both joint custodians agree to a change in custody.

"(b) The child, with the consent of the custodian or of both joint custodians, has been integrated into the family of the person seeking custody.

"(c) The child's present environment endangers significantly his physical health or his mental, moral, or emotional development and the harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child." (140 Ohio Laws, Part I, 1843.)

The juvenile court's judgment, as reflected in the referee's report and recommendation, contains no reference to former R.C. 3109.04(B). In fact, the referee specifically determined in his September 1990 report as follows:

"Connie Poling has substantially complied with the provisions of the case plan approved by the Court. She has been consistent in her visitation, she has maintained and improved in housekeeping and she has successfully completed parenting classes. Connie Poling exhibits good interaction with her children, is bonded with them, and is a concerned and loving parent. While mother has had psychiatric problems in the past, she regularly takes medication and is faithful in her counseling. Her mental health is not a current problem.

"* * *

"There are no current indications that either parent is incapable of providing care and protection of the children. As such there is no need for continued custody with Franklin County Children Services. Given the fact that mother's location is upsetting to the children, and as the children are doing well in the father's home, it is not in their best interests, at this time, for the mother to resume custody.* * *"

From the above, it appears that the referee granted custody to Charles, Sr. because Connie's trailer was in close proximity to the trailer owned by the perpetrator of sexual

crimes against Mary, which understandably upset the children during visits. An additional reason was that the children were doing well in Charles, Sr.'s new home. These factual determinations fall far short of the necessary findings required to modify custody pursuant to former R.C. 3109.04(B). Because we hold that a juvenile court must, pursuant to R.C. 2151.23(F)(1), exercise its custody jurisdiction in accordance with R.C. 3109.04, the juvenile court's decision in this case must be vacated and this cause remanded to that court for consideration of former R.C. 3109.04.3 This cause is reversed and remanded to the juvenile court for proceedings consistent with this opinion.

> Judgment reversed
> and cause remanded.

Moyer, C.J., Sweeney, Holmes, Douglas, Wright and H. Brown, JJ., concur.

FOOTNOTES:

1 For purposes of this case, and on remand, former R.C. 3109.04 will be applied. (140 Ohio Laws, Part I, 1843.) We are cognizant that R.C. 3109.04 has been amended, effective April 4, 1991. The amendment, while sweeping in some aspects, does not substantively impact our disposition of this case. More importantly, R.C. 2151.23(F)(1) remains unchanged. Hence, our holding is not limited by the amendment to R.C. 3109.04.

2 For this reason we disagree with the court of appeals' holding that the juvenile court can only acquire jurisdiction over matters of custody pursuant to a certification under R.C. 2151.23(D) and 3109.06. Rather, we interpret R.C. 2151.23(D) as an additional grant of jurisdiction, and not a limitation. See In re Verbanovic (Apr. 8, 1987), Mahoning App. No. 85 C.A. 66, unreported, 1987 WL 9636 (relying on our reasoning in In re Torok [1954], 161 Ohio St. 585, 53 O.O. 433, 120 N.E.2d 307).

3 We would caution the juvenile court that a finding of neglect, abuse or dependency may or may not, standing alone, be sufficient to warrant a modification of custody under R.C. 3109.04. Any such finding must be decided on a case-by-case basis, depending upon the factual pattern before that court. R.C. Chapter 2151 does not envision a scenario in which a noncustodial parent may seek to relitigate an adverse custody determination. Rather, this chapter provides a means by which the state may temporarily intervene in the family environment on behalf of the children when such intervention is mandated. See R.C. 2151.419(A), which requires the juvenile court to "determine whether the public children services agency * * * has made reasonable efforts to prevent the removal of the child from his home, to eliminate the continued removal of the child from his home, or to make it possible for the child to return home."