DECISION AND JUDGMENT ENTRY
{¶ 1} These consolidated appeals are before the court from judgments of the Huron County Court of Common Pleas, Juvenile Division, which allocated the parental rights and responsibilities of plaintiff-appellant, Steven D.C., and defendant-appellee, Carrie Anne P., with regard to their minor daughter Spencer. Appellant, the natural father of Spencer, raises the following assignments of error from those judgments:
 {¶ 2} "First Assignment of Error
 {¶ 3} "The trial court erred in determining that appellee should be designated residential parent and legal custodian of the minor child.
 {¶ 4} "Second Assignment of Error
 {¶ 5} "The trial court erred in failing to grant appellant's motion to compel release of psychological records.
 {¶ 6} "Third Assignment of Error
 {¶ 7} "The trial court erred and abused its discretion in granting of an interim order allocating parental rights and responsibilities that only reaffirmed the earlier order.
 {¶ 8} "Fourth Assignment of Error
 {¶ 9} "The trial court erred and abused its discretion in failing to consider the parties on equal footing.
 {¶ 10} "Fifth Assignment of Error
 {¶ 11} "The trial court erred and abused its discretion in finding that it did not have jurisdiction to consider appellant's objections to the magistrate's interim order and that the objections were moot.
 {¶ 12} "Sixth Assignment of Error
 {¶ 13} "The trial court erred and abused its discretion in finding the plaintiff's objections untimely."
 {¶ 14} Spencer P. was born to appellant and appellee on August 10, 2002. Appellant and appellee were not married at the time and had terminated their relationship. At the time of Spencer's birth, appellant declined to sign an acknowledgement of paternity and requested genetic testing during the administrative paternity proceeding. Appellant was subsequently determined to be Spencer's father, and on April 1, 2003, appellant filed a complaint in the court below for the allocation of parental rights and responsibilities and for a change in Spencer's surname. Subsequently, appellant filed a motion for shared parenting in which he proposed a shared parenting plan under which he would be the residential parent of Spencer for school purposes and appellee would be Spencer's residential parent during the times that Spencer was with appellee. Appellant also proposed that prior to Spencer's reaching school age, the parties would alternate companionship periods with Spencer at six month intervals.
 {¶ 15} The case proceeded to a hearing on the pending motions before a magistrate on October 25 and 28, 2003. During that hearing, appellant filed a motion to compel appellee to sign general releases to allow appellant to obtain appellee's medical and psychological records. The magistrate denied the motion, stating that it was untimely and that he had not heard any compelling reason to grant it. At the hearing, appellant, appellee, and nine other witnesses testified. Both appellant and appellee attempted to use the hearing as a forum for rehashing the history of their tempestuous relationship. Nevertheless, the following pertinent facts were presented to the court.
 {¶ 16} Appellant is a pharmacist with Medco Health Solutions in Brandon, Florida. He has been a pharmacist since 1995, currently earns approximately $90,000 per year and described his job as flexible in that his schedule would soon be Mondays through Fridays from 9:00 a.m. to 5:30 p.m. with no evenings or weekends, three weeks of vacation a year, and 11 days of personal time a year. At the time of the hearing, appellant was living in a rented house with three roommates. He had, however, put a down payment on a 2,500 square foot house that would soon be built. He described the new home as minutes away from his office in a nice community with a good school system. His parents and extended family, however, do live in the Norwalk, Ohio area, close to Spencer, appellee and her family.
 {¶ 17} Appellee lives in Norwalk, Ohio, and is a part-time flight attendant with Delta Airlines. She works approximately six days, or a minimum of 25 hours, per month and as a result thereof is away from home for three, and sometimes four, consecutive days at a time. Appellee earns approximately $17,000 per year and described her job as flexible in that she could request to fly on certain days. When appellee is working, Spencer stays with a childcare provider, Jennifer Welch. When appellee is not working, however, she is a stay-at-home parent. Appellee and Spencer live in a two bedroom, one bathroom house that appellee rents from her cousin. They have lived in that house since November 2002, near many of appellee's and appellant's family members. Although appellee currently works as a flight attendant, she has a dual masters degree in guidance/counseling and higher education/student affairs.
 {¶ 18} Since Spencer's birth, appellee has been her primary caregiver and has taken her to all of her doctor's appointments. Appellant accompanied appellee and Spencer to one such appointment when Spencer was an infant. A dispute arose over the payment of the co-pay, with appellant refusing to contribute and storming out of the office. This was only one of many instances demonstrating the parties' inability to cooperate for the benefit of Spencer.
 {¶ 19} Regarding his relationship with Spencer, appellant stated that he first visited her approximately one week after she was born and has kept her for overnight visits many times since her birth, although never in Florida. Despite living some distance from Spencer, appellant or his family, exercised all of the parenting times provided for by the trial court order during the pendency of the lower court proceedings. Appellant testified that he believes he can provide a more stable home life for Spencer because of his regular work hours, and wants Spencer's primary residence to be with him in Florida. He further stated that he had researched day care options in his area and testified regarding two possible options. He expressed concern regarding appellee's job as a flight attendant, believing that her schedule was too inconsistent and that Spencer needed routine in her life. Appellant also expressed concern as to his, or anyone's, ability to contact appellee in the event of an emergency, citing several instances when he attempted to contact appellee while she was flying and was unable to do so.
 {¶ 20} During the proceedings below, appellant made much of appellee's use of the medication Zoloft, an antidepressant. Appellant testified that, being a pharmacist, he is aware of the potential side effects of the drug, including aggressiveness, and that he had witnessed appellee act aggressively toward him on two occasions in the past. He stated that he was concerned that appellee may act aggressively toward Spencer in the future. There was, however, no evidence that appellee had ever acted aggressively toward Spencer or anyone else. Moreover, appellee testified that appellant has harassed her through telephone calls and e-mail messages, and described appellant's actions toward her as bullying. The accusations made by both parties about the other simply demonstrated their inability to treat each other with respect and consideration.
 {¶ 21} Regarding visitation, both parties testified that they want the other to be involved in Spencer's life. Each party, however, wants Spencer to live with him/her in their respective states with the other party exercising visitation in that state. Appellant testified that because appellee is a flight attendant, she could easily travel to Florida at little or no expense on a regular basis and that he would pay for appellee to stay at a hotel when she exercises visitation. He further testified, however, that he did not believe it would be good for Spencer to regularly fly back and forth between Ohio and Florida for visitation purposes. Appellee also testified that she did not want Spencer flying to Florida for visitation until she was of school age, which she defined as five years old. Appellee was further opposed to appellant exercising visitation in Florida at all and believed that appellant should travel to Ohio for visitation purposes. As to visitation that took place during the proceedings below, although appellee never denied appellant or his family court ordered visitation, there were several occasions when appellant or his family asked to spend time with Spencer and appellee denied the request. There was a further incident, however, when appellant had planned a birthday party for Spencer during a weekend when he was to be in Ohio. He had notified appellee approximately one week before his visit and asked if he could have Spencer from Friday until Monday, with the party scheduled for Saturday. When appellee responded that she had already made plans for she and Spencer on Sunday but that appellant could have Spencer from Friday until Sunday, appellant cancelled the birthday party and did not visit with Spencer at all that weekend.
 {¶ 22} Other witnesses that testified below were essentially character witnesses for appellant and appellee, who testified about the parties' relative relationships with Spencer and their parenting abilities.
 {¶ 23} On November 20, 2003, the magistrate issued a decision on the complaint and on the motion for shared parenting. In pertinent part, the court designated appellee as Spencer's residential parent and legal custodian and awarded appellant parenting time with Spencer in accordance with the court's standard policy on long distance companionship, which the court attached to its decision. In addition to its award of companionship per the schedule, the court further awarded appellant one consecutive three day period of parenting time each month when appellant is in Ohio and ordered appellant to notify appellee 30 days in advance of exercising this additional parenting time. The court further ordered appellant to pay appellee child support in the amount of $971.61 per month; made orders with regard to medical insurance, and extraordinary medical, dental, and ophthalmological expenses; awarded appellant the right to claim Spencer as a dependent for income tax purposes; denied appellant's request to change Spencer's surname; and again denied appellant's motion to compel appellee to sign releases to allow appellant access to appellee's medical and psychological records.
 {¶ 24} In naming appellee as Spencer's residential parent and legal custodian, the court made numerous findings, including that both parties have been observed to enjoy a loving and affectionate relationship with Spencer, engage Spencer in age-appropriate activities, and in the following areas were essentially equal: the ability to provide for Spencer's day-to-day needs, the health of the parties and Spencer, the likelihood of honoring and facilitating court-ordered parenting time, and the payment of child support obligations. Nevertheless, the court did find the following factors weighed significantly in favor of designating appellee as the residential parent and legal custodian of Spencer: "(a) Mother has been Spencer's primary caregiver for the very young Spencer since the child's birth; (b) both parents have extended family, who have significant opportunity for contact with Spencer, in the immediate area in which Spencer has had her primary home since birth; (c) Mother's present part-time employment schedule allows her to spend more of Spencer's waking hours with the child, rather than placing her in a day-care facility; (d) Mother's home environment presents somewhat more stability than Father's at present insofar as Mother has no immediate plans to move; Father, however, lives with three (3) persons with whom Spencer would have significant contact, but with whom Spencer has no significant contact as yet, and Father plans to change residences again in spring 2004[.]"
 {¶ 25} Subsequently, appellant filed a motion for an extension of time to file objections to the magistrate's decision, which the court granted. Those objections were filed on April 21, 2004. In addition, appellant filed a motion for an interim order for visitation and motion for an expedited hearing on that motion. Appellant alleged that since filing his request for an extension to file objections to the magistrate's decision, appellee had been requiring him to give a minimum of 30 days notice to exercise all visitation. The magistrate held a hearing on appellant's motion for an interim order, and on April 22, 2004, issued an order which essentially maintained, on an interim basis, the visitation order set forth in the November 20, 2003 decision pending the court's ruling on objections to that decision. In addition, the court clarified its visitation order "to minimize potential conflicts in the parties' interpretation of the Court's standard policy." Appellant responded to this order (the "interim order") by filing on May 3, 2004, his first motion for an extension of time to file a motion to set aside the interim order and to file objections to that order. The lower court granted appellant a 30 day extension to June 2, 2004, to file his motion and objections. On May 27, 2004, appellant filed a second motion for extension. The court granted the motion and ordered appellant to file his motion and objections by July 1, 2004.
 {¶ 26} On May 26, 2004, the lower court issued its decision and judgment entry on appellant's objections to the November 20, 2003 magistrate's decision. The court found, upon a careful and independent analysis of the record, including the transcript of proceedings, that there was competent and credible evidence to support the magistrate's decision. The court, therefore, overruled appellant's objections, designated appellee as Spencer's residential parent and legal custodian, and affirmed all other orders from the magistrate's decision. On June 24, 2004, appellant filed a notice of appeal from that decision and judgment entry. Thereafter, appellant filed a third request for an extension of time to file a motion to set aside the interim order and to file objections to that order. The lower court granted that request and ordered appellant to file his motion and objections by July 5, 2004. Appellant filed his objections to the magistrate's interim order on July 6, 2004. In a decision and judgment entry of July 22, 2004, the lower court overruled the objections, finding them to be untimely. The court further determined that the interim order expired by operation of law on May 20, 2004, and that the objections were moot. Appellant also filed a notice of appeal from that judgment, and in a decision and judgment entry of August 27, 2004, we ordered that the two appeals be consolidated.
 {¶ 27} Appellant's first and fourth assignments of error are related and will be discussed together. Appellant asserts that the trial court erred in designating appellee as the residential parent and legal custodian of Spencer and that in making that determination failed to consider the parties on equal footing.
 {¶ 28} R.C. 2151.23(A)(2) grants juvenile courts jurisdiction to determine the custody of any child that is not a ward of another court of this state. In making a custody determination pursuant to R.C. 2151.23, a juvenile court must do so in accordance with R.C. 3109.04. R.C. 2151.23(F)(1); In re Poling
(1992), 64 Ohio St.3d 211, paragraph two of the syllabus.
 {¶ 29} In the present case, appellant filed a motion for shared parenting and proposed a shared parenting plan. R.C.3109.04(A)(1) provides that in allocating parental rights and responsibilities for the care of a minor child, if a parent files a motion for shared parenting and a proposed shared parenting plan, but the court determines that no plan for shared parenting is in the best interest of the child, "the court, in a manner consistent with the best interest of the [child], shall allocate the parental rights and responsibilities for the care of the [child] primarily to one of the parents, designate that parent as the residential parent and the legal custodian of the child, and divide between the parents the other rights and responsibilities for the care of the [child], including, but not limited to, the responsibility to provide support for the [child] and the right of the parent who is not the residential parent to have continuing contact with the [child]." R.C. 3109.04(B)(1) then provides that in allocating the parental rights and responsibilities for the care of a child in an original proceeding, "the court shall take into account that which would be in the best interest of the [child]."
 {¶ 30} In determining the best interest of a child in an original decree allocating parental rights and responsibilities for the care of a child, R.C. 3109.04(F)(1) provides that the court shall consider all relevant factors, including, but not limited to:
 {¶ 31} "(a) The wishes of the child's parents regarding the child's care;
 {¶ 32} "* * *
 {¶ 33} "(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;
 {¶ 34} "(d) The child's adjustment to the child's home, school, and community;
 {¶ 35} "(e) The mental and physical health of all persons involved in the situation;
 {¶ 36} "(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;
 {¶ 37} "(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;
 {¶ 38} "* * *
 {¶ 39} "(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;
 {¶ 40} "(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state."
 {¶ 41} Thus, the best interest of the child standard applies to initial determinations of custody as between parents and the trial court has broad discretion in evaluating the factors set forth above. In Trickey v. Trickey (1952), 158 Ohio St. 9, 13, the Supreme Court of Ohio noted: "In proceedings involving the custody and welfare of children the power of the trial court to exercise discretion is peculiarly important. The knowledge obtained through contact with and observation of the parties and through independent investigation can not be conveyed to a reviewing court by printed record." Accordingly, absent a showing of an abuse of discretion, the trial court's determination as to custody will not be disturbed on appeal.
 {¶ 42} Appellant contends that the lower court did not treat him with equal standing in evaluating the best interest factors and asserts that if the court had treated the parties equally it could only have concluded that granting him residential custody of Spencer was in Spencer's best interest. From our review of the record, however, it is clear that the court did treat the parties equally. The court recognized that both parties had a loving and affectionate relationship with Spencer, that both parties participated in her daily care, that neither parties' home was inappropriate for Spencer, and that both parties were equally likely to honor and facilitate court-approved parenting time. In addition, the court gave no weight to evidence presented by appellee that on one occasion when Spencer had a temperature of 104 degrees appellant failed to call a doctor. The court found that appellant dealt with the health situation appropriately by giving Spencer acetaminophen and a lukewarm bath, which quickly lowered her temperature. The court did, however, find that the appellant had not demonstrated an ability to communicate effectively to make joint decisions for Spencer and that shared parenting was not in Spencer's best interest. The court then specifically identified the factors quoted above that it felt weighed in favor of designating appellee as Spencer's residential parent and legal custodian.
 {¶ 43} In light of the lower court's full consideration of the appropriate factors, and given that the court had an opportunity to observe in court the parents and their behavior toward each other, we cannot say that the court failed to treat the parties equally or that the court abused its discretion in its designation of appellee as Spencer's residential parent and legal custodian. The first and fourth assignments of error are not well-taken.
 {¶ 44} In his second assignment of error, appellant contends that the lower court erred in failing to grant his motion to compel the release of appellee's psychological records. Appellant asserts that because appellee's mental health was an issue for the court to consider under the best interest standard, the court abused its discretion in denying the motion to compel.
 {¶ 45} It is well-settled that trial courts enjoy considerable discretion in the regulation of discovery proceedings. Manofsky v. Goodyear Tire Rubber Co. (1990),69 Ohio App.3d 663, 668. Therefore, "absent an abuse of discretion, an appellate court must affirm the trial court's disposition of discovery issues." State ex rel. The V Cos. v. Marshall (1998),81 Ohio St.3d 467, 469. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable."Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 46} It is clear that whenever the custody of a child is in dispute and the court is called upon to determine the best interest of the child, R.C. 3109.04(F)(1) requires that court to consider the mental and physical health of all persons involved in the situation. By filing his motion for custody of Spencer and motion for shared parenting, appellant placed the mental conditions of himself, appellee and Spencer in issue. In his first set of interrogatories propounded upon appellee, appellant asked appellee the following question: "What is the condition of your health? In answering this question, you are to state the current state of your health and any past problems of significance. If you are or have been under the care of a physician, psychologist, or psychiatrist, state the professional's name and address, and state what conditions with which you were diagnosed and the dates of treatment, what medications you are taking, the dosage, how long you have taken the medication, why you take it, and who prescribed it." To this question, appellee answered: "Excellent." Those answers to interrogatories were signed by appellee on August 27, 2003.
 {¶ 47} Subsequently, in her deposition, of September 15, 2003, appellee testified that she had at various times taken the antidepressant Zoloft and that she had undergone counseling in the past, although she denied that she suffers from depression. She testified that she takes Zoloft for anxiety. She stated, however, that she would not release her medical records without an order from the court. Then, on October 24, 2003, the day before the first day of trial, appellant filed his motion to compel appellee to sign releases to allow appellant to obtain appellee's medical and psychological records. The court denied the motion, finding that appellant was aware of any psychological or medical issues by the time of appellee's deposition and that the motion was therefore untimely. The court further found that appellant had offered no explanation or justification for his delay in filing the request and that no compelling evidence had been presented to show that a postponement of the trial was appropriate.
 {¶ 48} From appellant's own testimony, it is clear that he knew appellee took Zoloft before Spencer was even conceived. In addition, as a pharmacist, he was aware of the conditions for which Zoloft is prescribed and the potential side effects of the drug. Accordingly, appellant was aware of any of appellee's potential mental health issues long before he filed for custody. At the trial below, appellant gave no explanation for the delay in filing his motion to compel. Under these circumstances, we cannot find that the lower court abused its discretion in denying the motion to compel and the second assignment of error is not well-taken.
 {¶ 49} Appellant's third, fifth, and sixth assignments of error address various aspects of the court's interim order of visitation, entered on April 22, 2004. Appellant contends that the interim order was flawed in that it only reaffirmed the court's earlier visitation order, that the lower court erred in ruling that it did not have jurisdiction to consider appellant's objections to the interim order, and that the lower court erred in ruling that appellant's objections to the interim order were moot and untimely. For the following reasons, we find that the trial court's rulings on these issues were correct.
 {¶ 50} Initially, we are compelled to address the nature of the "interim order," and the authority of juvenile court magistrate's to enter orders under Juv.R. 40.
 {¶ 51} Juv.R. 40 is identical to Civ.R. 53 and governs the procedures to be followed when a juvenile court judge refers a case to a magistrate. Juv.R. 40(C)(3) grants a magistrate the power to enter orders as follows:
 {¶ 52} "(a) Pretrial orders. Unless otherwise specified in the order of reference, the magistrate may enter orders effective without judicial approval in pretrial proceedings under Civ.R. 16, in discovery proceedings under Civ.R. 26 to 37, Juv.R. 24 and 25, and in the following situations:
 {¶ 53} "(i) Appointment of an attorney or guardian ad litem pursuant to Juv.R. 4 and 29(B)(4);
 {¶ 54} "(ii) Taking a child into custody pursuant to Juv.R. 6;
 {¶ 55} "(iii) Detention hearings pursuant to Juv.R. 7;
 {¶ 56} "(iv) Temporary orders pursuant to Juv.R. 13 [ex parte proceedings in abuse, neglect and dependency cases];
 {¶ 57} "(v) Extension of temporary orders pursuant to Juv.R. 14 [abuse, neglect and dependency cases];
 {¶ 58} "(vi) Summons and warrants pursuant to Juv.R. 15;
 {¶ 59} "(vii) Preliminary conferences pursuant to Juv.R. 21;
 {¶ 60} "(viii) Continuances pursuant to Juv.R. 23;
 {¶ 61} "(ix) Deposition orders pursuant to Juv.R. 27(B)(3);
 {¶ 62} "(x) Orders for social histories, physical and mental examinations pursuant to Juv.R. 32:
 {¶ 63} "(xi) Other orders as necessary to regulate the proceedings."
 {¶ 64} When a magistrate issues an order authorized by Juv.R. 40, the order "shall be in writing, signed by the magistrate, identified as a magistrate's order in the caption, filed with the clerk, and served on all parties or their attorneys." Juv.R. 40(C)(3)(e).
 {¶ 65} In contrast to magistrates' orders, magistrates' decisions are issued on referred matters and are subject to judicial approval. Juv.R. 40(E). As we stated in Barker v.Barker (1997), 118 Ohio App.3d 706, 711, with regard to Civ.R. 53, once the magistrate's decision is filed, the court has three options: "First, it may wait until the time for filing objections has passed (fourteen days) and adopt the decision as its permanent order if no objections have been filed and no errors of law appear on the face of the decision. Second, it may adopt the decision right away as the court's permanent order, but in this event timely objections stay both the execution of the order and the time for filing a notice of appeal, App.R. 4(B)(2), until the objections have been ruled on by the court. Third, it may make an interim order based on the magistrate's decision right away where immediate relief is justified, and in this event timely objections do not stay execution of the interim order. However, the interim order expires within twenty-eight days, which may be extended for one additional twenty-eight day period by the court. At the end of the interim order period the order expires and the court must enter its permanent judgment."
 {¶ 66} There is nothing in Juv.R. 40 that grants magistrates' the express power to enter interim orders as contemplated by Juv.R. 40(E)(4)(c). Nevertheless, because the rule does allow juvenile courts to refer to magistrates "other orders as necessary to regulate the proceedings," and because the lower court clearly allowed the magistrate below to hold a hearing on appellant's motion for an interim order for visitation pending the court's ruling on his objections to the underlying magistrate's decision, we must conclude that the magistrate below did have the authority to issue an interim order on appellant's motion. An interim order, however, is only valid for 28 days, for the purpose of an interim order is to govern the actions of the parties until the court enters a final judgment. At the end of the 28 days, the judge must do one of the following: 1) extend the interim order for one more 28 day period; 2) if no objections to the magistrate's decision have been filed, adopt, reject or modify the magistrate's decision and enter judgment accordingly; or 3) if objections to the magistrate's decision have been filed, rule on the objections and adopt, reject or modify the magistrate's decision and enter judgment accordingly. Regardless, once the court enters an order ruling on a party's objections and adopting, rejecting or modifying the magistrate's decision, the interim order expires by operation of law.
 {¶ 67} In the proceedings below, the interim order of April 22, 2004, was titled "magistrate's order." Pursuant to Juv.R. 40(E)(4)(c), that order expired on May 20, 2004, unless "within that time and for good cause shown" the court extended the order for another 28 days. The lower court did not extend the order as provided for in the rule and, as such, it expired on May 20, 2004, with the lower court's judgment of May 26, 2004, being the final judgment of the court. Assuming arguendo that the extensions granted to appellant by the lower court were extensions of the interim order, the interim order could only be extended for one additional 28 day period, or until June 29, 2004. Appellant, however, filed his notice of appeal from the trial court's final judgment on June 24, 2004, thereby divesting the trial court of jurisdiction except to take action in aid of the appeal. Majnaric v. Majnaric (1975), 46 Ohio App.2d 157. The lower court, therefore, did not err in ruling that it did not have jurisdiction to consider appellant's objections to the interim order.
 {¶ 68} The third, fifth, and sixth assignments of error are therefore not well-taken.
 {¶ 69} On consideration whereof, the court finds that substantial justice has been done the party complaining and the judgment of the Huron County Court of Common Pleas, Juvenile Division, is affirmed. Appellant is ordered to pay the costs of this appeal for which sum judgment is rendered against appellant on behalf of Huron County and for which execution is awarded. See App.R. 24.
Judgment Affirmed.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Pietrykowski, J., Skow, J., Parish, J., concur.