**[Cite as *Bell v. Bell*, 2017-Ohio-1252.]**

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| JESSICA BELL, NKA RUFENER | JUDGES:<br>Hon. William B. Hoffman, P.J. |
|     Plaintiff-Appellee | Hon. John W. Wise, J.<br>Hon. Craig R. Baldwin, J. |
| -vs- | Case No. 2016AP110053 |
| JAMES BELL, JR. | |
|     Defendant-Appellant | O P I N I O N |

CHARACTER OF PROCEEDING:       Appeal from the Tuscarawas County Court of Common Pleas, Case No. 2014TC060235

JUDGMENT:                    Affirmed

DATE OF JUDGMENT ENTRY:     April 3, 2017

APPEARANCES:

For Plaintiff-Appellee

DAN GUINN
Guinn Law Firm, LLC
104 South Broadway Street
PO Box 804
New Philadelphia, Ohio 44663

For Defendant-Appellant

MICHAEL C. JOHNSON
Johnson, Urban & Range Co., LPA
117 South Broadway
PO Box 1007
New Philadelphia, Ohio 44663

*Hoffman, P.J.*

**{¶1}**    Defendant-appellant James Bell, Jr. ("Father") appeals the October 20, 2016 Judgment Entry entered by the Tuscarawas County Court of Common Pleas, which overruled his objections to the magistrate's July 14, 2016 decision, and approved and adopted the magistrate's findings of fact and conclusions of law with modifications. Plaintiff-appellee is Jessica Bell, nka Jessica Rufener ("Mother").

STATEMENT OF THE FACTS AND CASE

**{¶2}**    The parties were married on February 12, 2000, in New Philadelphia, Tuscarawas County, Ohio.  Two children were born as issue of the marriage, to wit: Dakota Bell (DOB 07/12/00) and Autumn Bell (DOB 12/22/2003).  Mother filed a complaint for divorce on June 18, 2014.  The parties entered into a shared parenting plan as well as a separation agreement which were incorporated into the divorce decree filed February 25, 2015.

**{¶3}**    The shared parenting plan named Father as the primary residential parent of Dakota and Mother as the primary residential parent of Autumn.  The shared parenting plan required Mother and Dakota to continue counseling, working towards standard visitation.  In addition, the shared parenting plan provided:

So long as Dakota is home schooled, he shall attend QDA [Quaker Digital Academy] classroom not less than three days per week for not less

than two hours[1].  Father shall provide transportation for two trips each week

and Mother shall provide transportation for one trip each week.

**{¶4}**    Mother filed a motion to reallocate parental rights and responsibilities with respect to Dakota on August 21, 2015.  Therein, Mother asserted it was no longer in Dakota's best interest for Father to be his residential parent and legal custodian.  Mother maintained, contrary to the shared parenting plan, Father was not ensuring Dakota's attendance at QDA during the week and was not properly supervising Dakota.  Mother added Father was no longer facilitating visitation between her and Dakota, was not attending to Dakota's medical issues, and was not exercising his parenting time with Autumn.

**{¶5}**    At a hearing before the magistrate on January 15, 2016, the parties reached an agreement as to some of the issues raised in Mother's motion.  The magistrate issued an Interim Order on January 19, 2016, adopting the parties' agreement.  The Order provided Dakota would attend the physical location of QDA Monday through Friday, 9:00 am to 3:00 pm; and complete his current economics class by the end of January, 2016, and make significant progress in his next scheduled class.  The parties anticipated Dakota would be at high school sophomore grade level by June 3, 2016, as he was approximately one and a half years behind in school. The Order further provided if Dakota failed to attend QDA five hours per day or did not show the required percentage of progress, he would be immediately transferred to the local public high school.

---

[1] Quaker Digital Academy is an on-line home school program which also has physical site where students can go to complete school work and receive academic assistance as well as other supports.

**{¶6}** The magistrate conducted a full hearing on Mother's motion on June 14, 2016. Via Magistrate's Decision filed July 14, 2016, the magistrate recommended no change in custody, but ordered Dakota be enrolled in traditional public high school in Father's school district for the 2016-2017 academic year. The magistrate further recommended both parties actively participate in the reunification counseling to repair Dakota's relationship with Mother and follow all recommendations of Dakota's counselor, and Dakota continue to participate in individual counseling until successfully discharged by his counselor.

**{¶7}** Father filed objections to the magistrate's decision on July 27, 2016. Specifically, Father objected to the magistrate's finding Dakota's school attendance and progress remained substandard, and argued the child should not be forced to go to public school. Father also challenged the magistrate's failure to rule on the issue of reimbursement to him for medical insurance costs. Mother also filed timely objections relative to the magistrate's decision not to change custody of Dakota.

**{¶8}** Via Judgment Entry filed October 20, 2016, the trial court overruled Father's objections to the magistrate's decision, and overruled in part, and sustained in part Mother's objections. The trial court approved and adopted the magistrate's findings of fact and conclusions of law with modifications.

**{¶9}** It is from that judgment entry Father appeals, raising the following as error:

I. THE TRIAL COURT COMMITTED AN ERROR IN LAW BY ORDERING THE 16 YEAR OLD CHILD TO BE ENROLLED IN THE NEW PHILADELPHIA PUBLIC SCHOOL PHYSICAL BUILDING FOR SCHOOL PURPOSES.

FURTHER, THE TRIAL COURT COMMITTED AN ABUSE OF DISCRETION IN ORDERING THE CHILD INTO PUBLIC SCHOOL FROM THE QUAKER DIGITAL ACADEMY.

I

**{¶10}** In his sole assignment of error, Father contends the trial court erred and abused its discretion in ordering Dakota be enrolled in traditional public high school rather than continue online schooling.   Father maintains because the trial court did not modify custody, he, as the residential parent, is entitled to determine where Dakota attends school. We disagree.

**{¶11}** We begin by noting, the court in which a decree of divorce is originally rendered retains continuing jurisdiction over matters relating to the custody, care, and support of the minor children of the parties. *In re Poling* (1992), 64 Ohio St.3d 211,215, 594 N.E.2d 589, citing, *Corbett v. Corbett* (1930)*,* 123 Ohio St. 76, 174 N.E. 10; Juv. R. 75(J).

**{¶12}** We review a trial court's decision to modify a shared parenting plan for an abuse of discretion. *Girdlestone v. Girdlestone*, 5th Dist. Stark No. 2016 CA 00019, 2016-Ohio-8073, ¶ 12. The term abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore* (1983)*,* 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.  "[T]he power of the trial court to exercise discretion is peculiarly important in proceedings involving the custody and welfare of children." *Kenney v. Kenney,* 12th Dist. No. CA2003–07–078, 2004–Ohio–3912, ¶ 6.

**{¶13}** In addressing a motion for the termination or modification of a shared parenting plan where the parents have ceased to mutually agree, a trial court must determine (1) whether a change in circumstances has occurred, (2) whether termination or modification is in the children's best interests, and (3) whether the advantage to the child resulting from the termination or modification outweighs any potential harm. *Girdlestone,* ¶ 11. *See,* also, *Ford v. Ford,* 5th Dist. Tuscarawas No.2012 AP 03 0025, 2012–Ohio–5454, ¶ 13.

**{¶14}** R.C. 3109.04(E)(2)(b) provides:

The court may modify the terms of the plan for shared parenting approved by the court and incorporated by it into the shared parenting decree upon its own motion at any time if the court determines that the modifications are in the best interest of the children or upon the request of one or both of the parents under the decree. Modifications under this division may be made at any time. The court shall not make any modification to the plan under this division, unless the modification is in the best interest of the children.

**{¶15}** The parties' shared parenting plan, which was incorporated into the divorce decree, provided:

So long as Dakota is home schooled, he shall attend QDA classroom not less than three days per week for not less than two hours. Father shall

provide transportation for two trips each week and Mother shall provide transportation for one trip each week.

{¶16} Mother filed a motion to reallocate parental rights and responsibilities due, in part, to Dakota's poor performance at QDA and Father's failure to address the issue. The magistrate conducted an initial hearing on January 15, 2016, at which the parties reached certain agreements with respect to Dakota's schooling. The magistrate issued an Order on January 19, 2016, which memorialized the parties' interim agreements. The Order specifically provided:

- The parties further agree that Dakota, who is attending QDA, will attend the QDA physical school at New Towne Mall Monday through Friday. [Father] will drop Dakota off at the maternal grandmother's home on his way to work each Monday through Friday. Maternal grandmother will take Dakota to QDA and have him there by 9:00 a.m. each day. Maternal grandmother will pick Dakota up from QDA at 3:00 p.m. each day and return him to [Father's] home. If the QDA office at the New Towne Mall is closed, Dakota will be responsible for completing five hours of schoolwork for each day they are closed, the week prior to them being closed. * * * The *Guardian ad Litem* will be in regular contact with QDA to verify that Dakota is signed into his QDA account for at least five hours each Monday through Friday and she will verify that an additional five hours was completed the week prior to any day that QDA is closed.

- The parties agree that they will insure that Dakota completes his current economics class by the end of January 2016 and that immediately upon completion of that class * * * Dakota will make significant progress in his next scheduled class, which is his math class. The *Guardian ad Litem* will obtain from QDA guidelines as to the percent of progress that should reasonably be expected from Dakota in class each week. She will provide that at the review hearing. The parties anticipate that Dakota will be at grade level by 06/03/2016. Grade level at that time should be to have completed his sophomore year of high school.

- The parties agree that if Dakota does not attend five hours per day or if Dakota does not show the required percentage of progress, that he will be immediately transferred to the New Philadelphia High School.

- * * *

- The Magistrate finds the above agreement to be in the best interest of the child and both parties testified under oath they believed this was in the best interest of the child. January 19, 2016 Magistrate's Order at 2-4.

{¶17} The record reveals, as of the June 14, 2016 magistrate's hearing, Dakota remained a year behind in his academics. While in public school, Dakota earned excellent grades, however, his final grades at QDA were 2 B's, a C, and a D. Dakota had not completed a PE class and had not commenced his Biology class. Dakota did not receive any assistance or socialization through QDA. He was no longer involved in extracurricular activities. Although Dakota attended QDA the required five hours per day, he spent up

to seven hours each day playing video games. The Guardian ad Litem recommended Dakota be immediately enrolled in New Philadelphia High School. The magistrate found the problems with Dakota's schooling had not been resolved over the course of 18 months.

{¶18} Based upon the foregoing and the entire record in this matter, we find the trial court did not abuse its discretion in ordering Dakota attend traditional public school.

{¶19} Father's sole assignment of error is overruled.

{¶20} The judgment of the Tuscarawas Court of Common Pleas is affirmed.

By: Hoffman, P.J.

Wise, John, J. and

Baldwin, J. concur