[Cite as *In re M.J.S.*, 2022-Ohio-1114.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | |
|---|---|
| IN RE: M.J.S. & M.N. | : |
| | : |
| | :     Appellate Case No. 29292 |
| | : |
| | :     Trial Court Case Nos. G-2007-000935- |
| | :     1S; G-2018-005816-0G, 0M; G-2018- |
| | :     004458-0Z, 1E |
| | : |
| | :     (Appeal from Common Pleas |
| | :     Court – Juvenile Division) |

. . . . . . . . . . .

O P I N I O N

Rendered on the 1st day of April, 2022.

. . . . . . . . . . .

ROBERT ALAN BRENNER, Atty. Reg. No. 0067714, P.O. Box 340214, Dayton, Ohio
45434
      Attorney for Defendant-Appellant Mother

MARTIN A. BEYER, Atty. Reg. No. 0060078, 204 South Ludlow Street, Suite 204,
Dayton, Ohio 45402
      Attorney for Defendant-Appellee Father of M.N.

G.S., Bellbrook, Ohio 45305
      Defendant-Appellee Father of M.J.S., Pro Se

MATHIAS H. HECK, JR. by ELIZABETH A. ELLIS, Atty. Reg. No. 0074332, Assistant
Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, 301
West Third Street, P.O. Box 972, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee M.C.C.S.

. . . . . . . . . . . . .

LEWIS, J.

{¶ 1} Appellant Mother appeals from an order of the juvenile court granting legal custody of her two children to their legal fathers.

I.      Facts and Course of Proceedings

{¶ 2} This appeal addresses two juvenile court cases.  Montgomery J.C. No. G-2018-004458-0Z, 1E involves M.N, a minor, and Montgomery J.C. No. G-2018-005816-0G, 0M, involves M.J.S., a minor.[1]  These two children have the same mother but different fathers.  For purposes of clarity and convenience to the parties, we will refer to the mother and the fathers as "Mother," "Father of M.N.," and "Father of M.J.S.," respectively.

{¶ 3} On September 7, 2018, the Montgomery County Department of Job and Family Services, Children Services Division ("MCCS") filed a dependency complaint in Case No. G-2018-004458-0Z,1E, alleging that M.N. was dependent due to Mother's arrest for stabbing Father of M.N. and threatening to kill him.  MCCS sought temporary custody with MCCS or Father of M.N.  The juvenile court granted interim custody of M.N. to MCCS, and the matter was scheduled for an adjudication hearing.

{¶ 4} On November 27, 2018, in Case Number G-2018-005816-0G, 0M, Mother filed a complaint for abuse, neglect, and dependence, requesting that the maternal aunt be given temporary custody of M.J.S.  According to the complaint, neither Mother nor Father of M.J.S. could then meet M.J.S.'s needs.

{¶ 5} Subsequently, the two cases were consolidated and the magistrate issued

---

[1] To protect the identity of the minor children, we will refer to them by their initials.

interim orders adjudicating both M.N. and M.J.S. dependent and awarding temporary custody of the children to their fathers. A hearing before the magistrate was held on November 4-7, 2019 and March 9-11, 2020. On April 14, 2020, the magistrate issued a decision finding that it was in the best interest of both children that their fathers be granted custody. The Mother filed objections and supplemental objections. On October 5, 2021, the juvenile court overruled Mother's objections, finding that 1) an award of legal custody of M.N. to his father was in the child's best interest; 2) an award of legal custody of M.J.S. to his father was in the child's best interest; 3) MCCS made reasonable efforts to prevent the removal of the children from the children's homes; and 4) awarding Mother supervised parenting time was in the children's best interest. Mother filed timely a notice of appeal from the juvenile court's order.

II. The Trial Court Did Not Abuse Its Discretion By Awarding Custody of The Two Children to Their Legal Fathers

{¶ 6} The Mother's sole assignment of error states:

THE JUVENILE COURT ERRED WHEN IT AWARDED LEGAL CUSTODY OF THE CHILDREN IN THIS CASE TO A NON-RELATIVE.

{¶ 7} Trial courts have substantial discretion in making custody decisions, and we review a court's decision for an abuse of discretion. *In re M.W.*, 2d Dist. Montgomery No. 26912, 2016-Ohio-4891, ¶ 58. " 'Abuse of discretion' has been defined as an attitude that is unreasonable, arbitrary, or unconscionable." (Citation omitted.) *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553

N.E.2d 597 (1990). The Supreme Court has stressed that "most instances of abuse of discretion will result in decisions that are simply unreasonable." *Id.* "A decision is unreasonable if there is no sound reasoning process that would support that decision." *Id.*

{¶ 8} When juvenile courts make custody decisions, they "must do so in accordance with the 'best interest of the child' standard set forth in R.C. 3109.04(F)(1)." *In re D.S.*, 2d Dist. Clark No. 2013-CA-51, 2014-Ohio-2444, ¶ 9, citing *In re Poling*, 64 Ohio St.3d 211, 594 N.E.2d 589 (1992) and R.C. 2151.23(F). "Notably, R.C. 3109.04(F)(1) does not limit courts to just the listed factors; courts are permitted to consider 'all relevant factors.' Thus, the trial court could consider other factors, including those in R.C. 2151.414(D)(1), if the court so chose." *In re C.N., K.N. and K.N.*, 2d Dist. Montgomery No. 27119, 2016-Ohio-7322, ¶ 51.

{¶ 9} R.C. 3109.04(F)(1) provides that the court shall consider all relevant factors when determining the best interest of the child, including, but not limited to the following: (a) the wishes of the child's parents regarding the child's care; (b) the wishes and concerns of the child; (c) the child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest; (d) the child's adjustment to the child's home, school, and community; (e) the mental and physical health of all persons involved; (f) the parent more likely to honor and facilitate court-approved parenting time rights or visitation; (g) whether either parent has failed to make all child support payments; (h) whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any

criminal offense involving any act that resulted in a child being an abused child or a neglected child; i) whether the residential parent has continuously and willfully denied the other parent's right to parenting time; and (j) whether either parent plans to establish a residence outside of Ohio.

{¶ 10} Similarly, R.C. 2151.414(D)(1) provides a non-exhaustive list of factors to consider in determining the best interest of the child, including: (a) the interaction and interrelationship of the child with the child's parents, siblings, relatives, and any other person who may significantly affect the child; (b) the wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (c) the custodial history of the child; (d) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (e) whether any of the factors in R.C. 2151.414(E)(7) to (11) apply in relation to the parents and child.

{¶ 11} After considering the factors in R.C. 3109.04(F)(1) and R.C. 2151.414(D)(1), the juvenile court found that it was in the best interest of M.J.S. and M.N. to grant legal custody to their respective fathers and that any harm likely caused by a change of the children's environment was outweighed by the advantages of the change of environment to the children.  October 5, 2021 Decision, p. 3.  The following are some of the factors that the trial court found weighed in favor of placing M.J.S. and M.N. with their respective fathers:  Mother repeatedly interacted inappropriately with the children during their visitation; Mother was indicted and convicted for attacking Father of M.N. with two knives, resulting in multiple stab wounds; the fathers cooperated with MCCS's efforts

while Mother often did not; the fathers were more likely to honor court-approved parenting time while there was a concern that Mother may flee with the children or harm them; Mother had failed to pay child support; both children have improved at school since temporary custody was awarded to the fathers; the children have developed close bonds with their fathers; both children's behavior and demeanor have improved since they were placed with their fathers; both of the fathers completed their mental health assessments and any suggested treatment while Mother did not; and Mother had refused to communicate with MCCS about her housing situation while the fathers both had cooperated and had stable housing. *Id.* at 3-15.

{¶ 12} Further, the juvenile court considered the case plans developed for the parents of M.J.S. and M.N. The court found that the evidence established that the Fathers of M.J.S. and M.N. were fully compliant with their case plans and completed all of their assigned objectives. But Mother made very little progress, if any, on her assigned objectives. *Id.* at 15-21. Mother's case plan objectives included the following: sign releases of information; complete announced and unannounced home visits and meet with MCCS as necessary; maintain suitable and independent housing; obtain legal employment and provide verification of income; complete a mental health assessment and cooperate with treatment; complete a parenting psychological evaluation; address domestic violence as part of the mental health treatment; resolve all criminal issues; comply with protection orders and refrain from engaging others in an effort to violate them; and visit with the children as ordered by the court. *Id.* at 17.

{¶ 13} The voluminous testimony of record supports the juvenile court's finding that

Mother made little, if any, progress on her case plan objectives. Mother contends, however, that we should reverse the juvenile court's judgment because "[i]t was in the best interests of the children for the juvenile court to award legal custody to their mother with protective supervision." Appellant's Brief, p. 3. In support of her position, Mother cites solely to her own testimony before the magistrate and ignores the overwhelming evidence weighing against an award of custody to Mother.

{¶ 14} The juvenile court found that Mother's testimony lacked credibility. October 5, 2021 Order, p. 4, 5, 8. For example, Mother admitted that she had previously falsified reports of human trafficking, causing the unnecessary involvement of multiple jurisdictions of law enforcement. Further, Mother testified that Father of M.N. forced her to work as a prostitute, but she previously had testified in a divorce hearing that she had never worked as a prostitute.

{¶ 15} The trial court is "best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). Deferential review in a child custody determination is especially crucial "where there may be much evident in the parties' demeanor and attitude that does not translate to the record well." *Davis v. Flickinger*, 77 Ohio St.3d 415, 419, 674 N.E.2d 1159 (1997).

{¶ 16} We defer to the juvenile court's finding that Mother's testimony lacked credibility at times and often was contradicted by more credible evidence. Further, as explained in great detail by the juvenile court, the best interest factors in R.C.

3109.04(F)(1) and R.C. 2151.414(D)(1) strongly supported that M.N. and M.J.S. should be placed in the custody of their legal fathers. Therefore, the trial court did not abuse its discretion in awarding custody of M.N. and M.J.S. to their fathers.

III. Conclusion

{¶ 17} Having overruled Mother's sole assignment of error, the judgments of the trial court are affirmed.

. . . . . . . . . . . .

TUCKER, P. J. and DONOVAN, J., concur.

Copies sent to:

Mathias H. Heck, Jr.
Elizabeth A. Ellis
Robert Alan Brenner
Martin A. Beyer
G.S.
P.J. Conboy
Douglas Hahn, GAL
Hon. Anthony Capizzi