OPINION
{¶ 1} Appellants, Kyle T. Curie and Legend H. Curie, appeal from an April 24, 2006 judgment entry of the Ashtabula County Court of Common Pleas, striking their attorney's Notice of Appearance and ordering that she has no right to represent them, and as such, should not have any further contact with them.
 {¶ 2} The facts leading up to this appeal are as follows. Appellees, Paul E. Curie and Shanna J. Curie, are the natural parents of appellants, who are minor children.[1] Appellees were married in September 1989, and subsequently divorced in January 1999. Pursuant to the final divorce decree, appellee Shanna J. Currie was awarded custody of appellants and appellee Paul E. Curie was ordered to pay child support.
 {¶ 3} On March 14, 2002, pursuant to an Agreed Judgment Entry, appellee Shanna J. Curie was permitted to relocate to the state of Florida with appellants. On May 5, 2003, appellee Paul E. Curie filed a Motion to Enforce Visitation, and on May 21, 2003, filed a Motion to Show Cause concerning his allegation of denial of visitation by appellee Shanna J. Curie.[2] On July 18, 2003, the trial court conducted an in camera interview of appellants and ordered appellees to adhere to an interim agreement for visitation for the balance of the summer. In addition, the trial court ordered parties to submit to mediation for the remaining visitation issues.
 {¶ 4} On June 23, 2004, appellee Paul E. Curie filed a Motion to Modify Custody and for Temporary Custody while the motion to modify was pending.[3] In addition, he filed a Motion for Appointment of Guardian Ad Litem ("GAL"). The trial court appointed Attorney Jane Lesko ("GAL Lesko"), on June 24, 2004.
 {¶ 5} On July 23, 2004, appellee Paul E. Curie filed an Emergency Motion for Temporary Custody. After a hearing on the matter, the court adopted the interim recommendations of GAL Lesko on August 4, 2004. In its judgment entry, the trial court permitted appellee Shanna J. Curie to move back to the state of Florida with appellants, so long as she followed the conditions set forth by GAL Lesko. One of the conditions was that she had to return to the state of Ohio during winter break 2004 so that Dr. Eileen Leininger ("Dr. Leininger"), a psychologist who interviewed appellants, could evaluate them once more.
 {¶ 6} In January 2005, GAL Lesko filed a motion to withdraw. In February, the court granted her motion and did not appoint another GAL. In June 2005, appellee Paul E. Curie filed a new Motion to Appoint a Guardian Ad Litem. After appellee Paul E. Curie filed a Motion for Hearing on All Pending Motions, the court set the matter for hearing. Pursuant to a Docket Entry on June 29, 2005, the trial court indicated that it held a status conference. In its entry, it noted that appellee Shanna J. Curie sold her home in Florida and moved to New Mexico with appellants.
 {¶ 7} On January 27, 2006, appellee Paul E. Curie filed an Amended Motion for Change of Custody and an Amended Motion to Show Cause for allegedly violating the August 4, 2004 court order. On February 7, 2006, the court appointed Attorney Pamela D. Houston ("GAL Houston") as GAL for appellants.
 {¶ 8} In the trial court's judgment entry dated March 3, 2006, it stated:
 {¶ 9} "In this Court's Judgment Entry of August 4, 2004, the Court noted that Dr. Eileen Leininger informed the Court that there was strong evidence of parental alienation syndrome of the children towards their father, the Plaintiff, while they have been with the Defendant, who is the residential parent and legal custodian of the children. Dr. Leininger noted that she was particularly concerned about the psychological condition of Kyle, feeling that he was clinically depressed. She described the Defendant as being a manipulative person, not credible, and having a personality disorder."
 {¶ 10} The trial court went on to note that since that order, appellee Shanna J. Curie has "totally ignored the visitation schedule and has failed to comply with this Court's order." It stated that she moved appellants from Florida to New Mexico, but they were currently living back in Ohio.
 {¶ 11} The trial court then ordered:
 {¶ 12} "* * * that the Ashtabula County Children Services Board ["ACCSB"] * * * should be named as an additional party in this action, as this Court believes that the children are neglected or dependent because of the parental alienation on the part of their mother, the Defendant, towards the Plaintiff, their father. Further, this Court feels that it is imperative that the children be psychologically evaluated to determine whether, in fact, there are parental alienation issues, which warrant the intervention of the Children Services Board.
 {¶ 13} "Given the past history of Shanna J. [Curie] in ignoring this Court's orders concerning visitation of the children with the Plaintiff, and the fact that she has moved from the state of Florida to the state of New Mexico and back to the state of Ohio, the Court feels it is imperative that the children, Kyle Curie and Legend Curie, be placed in the custody of [ACCSB] while a determination can be made concerning parental alienation, and would recommend that the children be placed during that time with their father, the Plaintiff, Paul E. Curie, or his parents, Mr. and Mrs. Edward Curie * * *."
 {¶ 14} As of March 6, 2006, appellee Shanna J. Curie had not turned the children over to ACCSB. Appellee Paul E. Curie filed a series of motions with the trial court, including a motion for restraining order, and an amended motion to show cause. That same day, the trial court issued an order to the Sheriff of Ashtabula County to take appellants into custody and present them to the ACCSB.
 {¶ 15} On March 8, 2006, GAL Houston filed a motion to withdraw due to a conflict resulting from her work with ACCSB. On March 22, 2006, the court granted her motion and did not appoint another GAL at that time.
 {¶ 16} On March 9, 2006, appellants were placed in appellee Paul E. Curie's home. Appellee Shanna J. Curie was initially given supervised visits with the children. However, the visits were revoked after, according to a caseworker from ACCSB, appellee Shanna J. Curie lied to one of the caseworkers who was supervising a visit. The caseworker's supervisor concluded that appellee Shanna J. Curie lied in order to obtain a "swab" from Kyle so that she could have DNA testing conducted to attempt to prove that appellee Paul E. Curie was not Kyle's natural father.
 {¶ 17} On April 18, 2006, appellants filed a Motion to Add New Party Defendants, to be added as parties in the case, and Attorney Laura DePledge ("Attorney DePledge") filed an affidavit stating that she had been retained to represent appellants. Attorney DePledge simultaneously filed a Notice of Appearance stating that she was representing appellants.
 {¶ 18} Also on April 18, 2006, appellee Paul E. Curie, joined by ACCSB, filed an Emergency Joint Ex Parte Motion for Restraining Order. The basis for the motion was that Attorney DePledge had gone to appellants' school, allegedly misrepresenting to the principal of the school that she had authority to interview them. In his affidavit, appellee Paul E. Curie averred: "Kyle Curie came home from school on April 18, 2006 and said to [me], `yes! — we have a new judge and we have our own attorney[.]" He stated that Kyle went on to say that his attorney came to his school, but would not tell appellee Paul E. Curie what she had said.[4]
 {¶ 19} On April 24, 2006, the trial court ordered that Attorney DePledge's Notice of Appearance be stricken from the record and further ordered that she was to have no contact with appellants.[5] In its order, the trial court stated, "[o]nly the Court may appoint counsel for the children in this matter and Attorney DePledge has no right to represent the children."
 {¶ 20} The trial court further indicated in a separate entry dated April 24, 2006, that after the status conference on April 18, 2004, appellee Shanna J. Curie was to have supervised visits once more. However, "[a]s a result of the conduct of Attorney DePledge and her unauthorized contact with the Curie children on April 18, 2006, together with the past conduct of the [d]efendant, Shanna J. [Curie], during the supervised visitation, all visitation in this matter on the part of Shanna J. [Curie] with Kyle Curie and Legend Curie is hereby TERMINATED." (Emphasis sic.)
 {¶ 21} On April 28, 2006, the trial judge, sua sponte, filed an order and affidavit to show cause against Attorney DePledge for her actions in going to appellants' school and misrepresenting to the school that she had authority to speak them. The trial judge stated in his order, "[In re Williams,101 Ohio St.3d 398, 2004-Ohio-1500] clearly states that the Court appoints counsel for the juvenile, where appropriate. Clearly, counsel would be appointed, where appropriate, who would look after the best interests of the child, including that child's legal rights, not some undisclosed third party, whose motives may be suspect." The trial judge stated further, "the Court believes that Attorney DePledge misrepresented her status by showing to the Jefferson School Principal some document or paperwork, which she represented as the authority for her to meet with the Curie children."
 {¶ 22} On May 4, 2006, the trial court, concluding that a forensic psychological evaluation by Dr. Gillette showed parental alienation on the part of the mother, and thus confirming that the children were dependent, certified the case to the Juvenile Division of the Ashtabula County Court of Common Pleas, concluding that it was in the best interests of the children. It retained jurisdiction, however, over the contempt of court action against Attorney DePledge "regarding her actions on April 18, 2006."
 {¶ 23} It is from the April 24, 2006 judgment entry that appellants appeal, raising the following two assignments of error:
 {¶ 24} "[1.] The trial court committed reversible error by striking Attorney DePledge's notice of appearance to provide legal representation for [appellants], alleged dependent or neglected minor children, while in the custody of the state.
 {¶ 25} "[2.] The trial court committed reversible error by ordering Attorney DePledge to have no further contact, directly or indirectly, with her clients while her clients are in the custody of the state."
 {¶ 26} In their first assignment, appellants argue that because the trial court placed them in the custody of ACCSB, they were denied their constitutional right to an attorney. In their second assignment, appellants contend that because the trial court placed appellants in the custody of ACCSB, they were denied their right to communicate with counsel. We will address appellants' arguments in tandem since they are interrelated.
 {¶ 27} Appellants do not explicitly challenge the jurisdiction of the trial court to place them in the custody of ACCSB. In fact, their entire appeal is based upon the fact that the trial court did place them into the custody of the state; i.e., ACCSB. However, jurisdiction is an issue that may be raised at any stage of the proceedings. Because we hold that the trial court did not have jurisdiction to place appellants in the custody of the state, appellants' arguments lack merit.
 {¶ 28} R.C. 3109.04 grants a court of competent jurisdiction the authority to allocate parental rights and responsibilities for the care of children. "R.C. 3109.04 is jurisdictional; it limits the * * * court's subject matter jurisdiction to allocate parental rights and responsibilities in and to the circumstances which that section identifies." Vance v. Vance,151 Ohio App.3d 391, 2003-Ohio-310, at ¶ 118 (Grady, J., concurring). R.C.3109.04(A) provides: "* * * [s]ubject to division (D)(2) of this section, the court may allocate the parental rights and responsibilities for the care of the children in either of the following ways:
 {¶ 29} "(1) * * * primarily to one of the parents, * * * [or]
 {¶ 30} "(2) * * * to both parents and issue a shared parenting order * * *."
 {¶ 31} Besides awarding custody to one or both parents, R.C.3109.04(D) provides the only other options given to a court allocating parental rights and responsibilities by statute. This provision states:
 {¶ 32} "(2) If the court finds * * * that it is in the best interest of the child for neither parent to be designated the residential parent and legal custodian of the child, it may commit the child to a relative of the child or certify a copy of its findings, together with as much of the record * * * that it considers necessary or as the juvenile court requests, to the juvenile court for further proceedings, and, upon the certification, the juvenile court has exclusive jurisdiction."
 {¶ 33} Thus, it is clear that a court's authority to allocate parental rights and responsibilities is limited by statute.Broome v. Broome (Jan. 28, 1976), 9th Dist. No. 2348, 1976 Ohio App. LEXIS 6792, at 4. "This [limitation] * * * is evident, and precludes such court from making any custody of children order to any persons other than either of the parents or other relative of such parents. It is a mandatory statutory directive." Id.[6] "The power to determine [a] court's jurisdiction is conferred on the General Assembly by Article IV, Section 4(B) of the Ohio Constitution. The court may not expand its jurisdiction outside the statutory bounds which the General Assembly has set."Vance, supra, at ¶ 118.
 {¶ 34} Alternatively, R.C. 2151.23 governs the jurisdiction of the juvenile court. In re Poling (1992), 64 Ohio St.3d 211,213. This section provides in part:
 {¶ 35} "(A) The juvenile court has exclusive original jurisdiction under the Revised Code as follows:
 {¶ 36} "(1) Concerning any child who on or about the date specified in the complaint * * * is alleged * * * to be a[n] * * * abused, neglected, or dependent child * * *."
 {¶ 37} Thus, we conclude that the trial court did not have jurisdiction to place appellants in the custody of ACCSB, and as such, they were not legally in the custody of the state. Appellants cite numerous statutes under R.C. Chapter 2151, as well as under the Juvenile Rules of Procedure to bolster their contention that the trial court violated their rights. However, it is not until a complaint has been filed in the juvenilecourt, that the protections noted by appellants attach.
 {¶ 38} Once a complaint has been filed, a juvenile court may order temporary custody to children services upon theallegation. That court must then hold a probable cause hearing within seventy-two hours to determine whether any charges of abuse, neglect, or dependency are in fact true. In re Surdel
(May 12, 1999), 9th Dist. No. 98CA007172, 1999 Ohio App. LEXIS 2164, at 19; R.C. 2151.33(D). If the juvenile court adjudicates a child as such, it may then choose from several dispositional options. R.C. 2151.353(A).
 {¶ 39} In addition, Juv.R. 4(A) guarantees every party, including children, the right to be represented by counsel. "These rights shall arise when a person becomes a party to a juvenile court proceeding." Id. The right then attaches as soon as a complaint is filed, or the child is taken into custody pursuant to Juv.R. 6. R.C. 2151.352; In re Williams, supra, at ¶ 13-14.
 {¶ 40} In the case sub judice, simply put, appellants were not parties to the action below. They were made subjects to the action by their parents, but they were not parties to it. If the case would have been in the juvenile court, then we agree that they would have been parties, pursuant to Juv.R. 2(Y) (defines "party" as "a child who is the subject of a juvenile court proceeding * * *"), and would have had a right to have counsel appointed for them. However, they were not. As such, the trial court did not err in striking Attorney DePledge's Notice of Appearance from the record. An attorney cannot appear before the court without a party to represent.
 {¶ 41} Furthermore, we do not agree with appellants that children have a right to private counsel. Lawyers have a duty, both to their clients and to the legal system, to represent their clients zealously within the bounds of the law. DR 7-101; Canon 7. A lawyer also has a duty to exercise independent, professional judgment on behalf of a client. Canon 5. Thus, conflicts may arise, when someone else, besides the client, compensates the lawyer for the services provided to the client. DR 5-107(A)(1) mandates that a lawyer shall not "[a]ccept compensation for * * * legal services from one other than his client." This disciplinary rule only permits a lawyer to accept compensation from one other than his client "with the consent of his client after full disclosure[.]"
 {¶ 42} In the case sub judice, appellants, as minors, were not presumably paying their attorney. In a child custody case, as here, we cannot imagine a more egregious conflict when someone else, more than likely a member of the father's family (or the father himself), or a member of the mother's family (or the mother herself), pays the attorney to represent the children.[7] It would be inappropriate for parents involved in a custody dispute to later learn from an attorney who claims to be representing their child or children that a third party has advanced or taken responsibility to pay that attorney's fees, when such child or children are not parties to the action in the court exercising domestic jurisdiction. Custody disputes, as clearly evidenced here, can be as vile as any case. Children are often the unfortunate victims of these cases, not pawns for their parents to play against one another, as in a game of chess.
 {¶ 43} It is apparent that the trial court judge had appellants' best interests at heart when he attempted to place them in the custody of ACCSB. Although we sympathize with the trial court judge, he did not have authority to do so. He should have certified the case to the juvenile court pursuant to R.C.3109.04(D)(2) or made a referral to ACCSB, and it in turn, could have filed a complaint for emergency custody in the juvenile court. Alternatively, he could have placed the children in the temporary custody of appellee Paul E. Curie or his father, since that is where he recommended ACCSB place the children pending its investigation, and where it did in fact place the children. At that point, he could have still ordered the forensic psychological evaluation and reserved his final decision for a later time. However, any error on the trial court's part is harmless, since on May 4, 2006, it did certify the case to the juvenile court.
 {¶ 44} We conclude that the trial court did not err when it struck appellants' attorney's Notice of Appearance from the record in the April 24, 2006 entry. The judgment of the Ashtabula County Court of Common Pleas is affirmed.
Cynthia Westcott Rice, J., Colleen Mary O'Toole, J., concur.
[1] Appellant Kyle T. Curie was born on December 26, 1989, and appellant Legend H. Curie was born on May 4, 1994.
[2] On May 5, 2003, appellee Shanna J. Curie filed a Motion to Dismiss, alleging that the Ashtabula County Court of Common Pleas did not have jurisdiction over the children. On July 18, 2003, appellee Shanna J. Curie appeared before the court at a show cause hearing. The matter was ultimately referred to mediation. On June 23, 2004, the mediator filed a report concluding that no agreement was reached between appellees due to the fact that there was no contact or response from appellee Shanna J. Curie. On June 29, 2004, the trial court denied her motion, concluding that it had jurisdiction to resolve the custody and visitation issues. On July 6, 2004, appellee Shanna J. Curie filed a notice of appeal to this court, regarding the trial court's denial of her motion to dismiss for lack of jurisdiction. We dismissed the case on July 7, 2004, because it was not a final appealable order.
[3] The trial court had not yet ruled on appellee Paul E. Curie's Motion to Enforce Visitation.
[4] Also attached to the motion was a report by Dr. Patricia Gillette, Ph.D. ("Dr. Gillette"), which was approximately ninety-pages long. Dr. Gillette was a psychologist who conducted a second psychological evaluation (a forensic child custody exam), this time on the entire family, not just appellants. In the report, Dr. Gillette concluded, "[t]his case meets every criteria of Parental Alienation Syndrome and represents a direct and willful violation of the prime duties of parenthood by Shanna. The extent of the parental alienation is extensive and emotional harm caused to the boys is severe." She recommended that appellee Paul E. Curie be named the primary custodian for both children.
[5] We note that the trial court never ruled on appellants' motion to be added as new party defendants. The court's order striking Attorney DePledge's Notice of Appearance would indicate a sub silento denial of the motion to be added as new party defendants. However, appellants do not raise this issue on appeal.
[6] In Broome, as in the case at hand, the trial court (domestic relations court in that case) granted temporary custody to the children services agency.
[7] Appellee Paul E. Curie claimed in an affidavit that he believed that a member of appellee Shanna J. Curie's family paid Attorney DePledge to represent appellants.